Argued December 11; affirmed December 24, 1935; rehearing denied February 11, 1936.

CHRIST *v.* McDONALD ET AL.

(52 P. (2d) 655)

*James West*, Deputy City Attorney, of Portland (Frank S. Grant, City Attorney, of Portland, on the brief), for appellants.

*H. E. Collier*, of Portland (Collier, Collier & Bernard, of Portland, on the brief), for respondent.

BEAN, J. This is an action for false arrest and imprisonment. The cause was tried to the court and jury. A verdict was rendered in favor of plaintiff for $350. Defendants appeal.

Plaintiff alleges in his complaint, as the gist of his cause of action, in substance, that on or about February 19, 1934, at 7 o'clock p. m., in the city of Portland, the defendants, as police officers of the city, wrongfully, unlawfully and without probable cause

and in wanton disregard of their duties and the rights of plaintiff, accosted the plaintiff without cause, wantonly, maliciously, wrongfully, forcibly and unlawfully arrested, detained and imprisoned the plaintiff in the city of Portland without any warrant of arrest for plaintiff and without any charges on file against the plaintiff, accusing him of any violation of any city ordinance, or the laws of the state, or of the United States, nor had plaintiff committed any crime, nor was in the commission of any crime; that plaintiff was wrongfully detained at the police station until 11:15 o'clock p. m. of said day, to his humiliation and abuse, and wrongfully and unlawfully and against his will took plaintiff's fingerprints, and that he was damaged in the sum of $5,000.

Defendants admitted that they were police officers of the city of Portland; denied that they arrested plaintiff, and alleged that on January 16, 1934, a grocery store in the city had been robbed, that a person substantially answering the description of the robber rented a room for a week at the home of C. A. Payne, shortly prior to the robbery and disappeared about the time of the robbery and said person had a Ford coupe answering the description of the Ford coupe occupied by plaintiff at the time alleged in his complaint; that plaintiff's Ford coupe was reported to the police department as "a suspicious vehicle" and was suspected of being the coupe used by the robber; that the police officers in the police department and the defendants believed and had reasonable cause for believing that said robbery had been committed by said plaintiff, George Christ, and that the superior officers of defendants ordered and directed defendants "to bring plaintiff to the police station for questioning" on February 19, 1934, at about 8:30; that defendants proceeded to

2417 N. W. Marshall street, where said suspicious appearing Ford coupe was reported by telephone to be parked, and found therein plaintiff and one Mrs. Agnes Jaynes; that defendants disclosed their identity and informed plaintiff of the robbery and that he was wanted for questioning at the police station; that plaintiff denied his connection with the robbery, but readily consented to go to the police station with defendants; that plaintiff voluntarily went with defendants to the police station at or about 8:30 p. m. and voluntarily submitted to interrogations until 9:45 p. m. as to his connection with said robbery, and thereupon departed from the police station. Defendants, in their answer, further allege: "That plaintiff was not arrested and was not detained against his will, but voluntarily remained for the purpose of establishing his innocence of any connection with said robbery." The reply put in issue the affirmative allegations of the answer.

The testimony in the case tended to show that plaintiff was a resident of the city of Portland, about 39 years of age, and was employed a number of years by the Northwest Stove Works. He had made arrangements to meet one Agnes Jaynes at the cornor of Twenty-fourth and Marshall streets in the city of Portland on the evening of February 19, 1934, at 7 o'clock p. m. for the purpose of having her reduce to typewriting a certain manuscript he prepared in connection with the union to which he belonged. Agnes Jaynes was a stenographer and had been acquainted with plaintiff for a number of years. She met him pursuant to the arrangement and had entered and was seated in the Model T Ford automobile. The dash light in the car was turned on. Defendants arrived on the scene, one approaching on the right side of plaintiff's car and one on the left side of the car. Defendants announced

they were officers. They were dressed in plain clothes and did not have on uniforms or caps or anything to distinguish themselves as officers. They stated they exhibited their stars which they carried in their pockets, but plaintiff claims he did not get a fair view of the star or badge for the reason that it was covered by the defendant's hand. Plaintiff tried to ascertain from defendants whether they were officers. Plaintiff was questioned as to his ownership of the car, as to who he was, where he lived, what his business was, etc. Plaintiff had in his possession a driver's license, library card, fishing and hunting licenses, union card and registration card, to which defendants paid no attention.

Plaintiff claims that defendants were quite abusive and insulting toward both parties and became angry because Agnes Jaynes questioned their authority, and, without any cause or provocation, arrested plaintiff. Plaintiff requested to be permitted to go to Twenty-third and Washington streets where his brother was operating a store, so that he might further identify himself, but was refused by the officers. Defendants had Agnes Jaynes get out of plaintiff's car and they put her in the defendant's car. One of the defendants got into plaintiff's car and compelled him to drive to the police station. Defendants required plaintiff, against his will, to be searched and they searched plaintiff's car. After they arrived at the station plaintiff's car was again searched and certain golf balls and a letter opener were taken therefrom and plaintiff and Agnes Jaynes were taken into the station. Plaintiff was taken into a room where he was subjected to numerous indignities and was kept and detained there until after 11 o'clock p. m. While there, and against his will, they took his fingerprints and at no time was

plaintiff informed why he was there. Defendants did not have a warrant of arrest nor did they have a search warrant, nor was plaintiff charged with the violation of any law, either federal, state or city. Plaintiff asserts he was greatly frightened, not only as to what might befall himself, but what might be done to Agnes Jaynes, that he suffered great humiliation and mental anguish, as well as shock from fright, which placed him under the care of a physician, and at the time of the trial he had not recovered from the shock.

Defendants assign as error that the trial court erred in rejecting defendants' evidence in proof of justification for the arrest or in mitigation of damages, and limiting the defense to denial of the arrest. Defendants and their superior officer testified in full in regard to all of the circumstances of the case and the cause of the alleged arrest. The testimony strongly showed that the jury was warranted in believing that defendants subjected the plaintiff to an arrest. Defendants claim that if there was an arrest it was justified, and they testified to all the circumstances and what was done, and gave their theory of the matter.

■ Sergeant Dana E. Jewell, witness on behalf of defendants, testified in regard to a holdup report about a month before the arrest in question, that he had the holdup investigated and what officers were detailed to investigate and report back to him. Counsel for defendants then submitted a large number of typewritten reports of officers as to the Fabinich holdup and investigations made in regard thereto, and offered the same in evidence for the purpose of showing information on which defendants acted, to which objection was made by plaintiff and the objection was sustained by the court. The typewritten reports were not sworn to, nor the signatures thereon identified, and none of the

officers who signed them, except Sergeant Jewell, appeared to verify them. The testimony of Sergeant Jewell was all admitted. The documents tendered were purely hearsay and were not admissible in evidence. The officers who made the arrest had no knowledge of the matters contained in the reports in question, except in a general way, to which they testified. There was no error in such ruling.

· The plaintiff stipulated with defendants that Sam Fabinich would testify as to the details of the robbery of his store on January 16, 1934, and as to the description of the robber, which testimony was much more direct than secondhand police reports that were apparently signed by different members of the police force but not identified.

■ Defendants were permitted to give detailed information as to what was done up near the corner of Twenty-fourth and Marshall streets and to thoroughly explain their actions in the matter, tending to show that they did not act maliciously. This they had a right to do, as it was alleged in the complaint that the arrest was malicious and wanton, in order to prevent or minimize punitive or exemplary damages, to which we will hereafter refer, but not as a justification.

■ Defendants' answer winds up with the statement: "That plaintiff was not arrested and was not detained against his will, but voluntarily remained for the purpose of establishing his innocence of any connection with said robbery." If defendants did not make the arrest, then they had no justification. In other words, it was necessary for them to plead a justification for making the arrest.

■■ False imprisonment consists in the unlawful restraint against his will of an individual's personal liberty or freedom of locomotion. The gist of false

imprisonment is unlawful detention: 25 C. J. 443, § 1. To constitute an arrest and imprisonment, it is not necessary that the party making the arrest should actually use violence or force towards the party arrested, or that he should even touch his body. If he profess to have authority to make the arrest, and he commands the person, by virtue of such pretended authority, to go with him, and the person obeys the order, and they go together in the direction pointed out by the person claiming the right to make the arrest, this is an arrest and imprisonment within the meaning of the law. The defendant should show that there was a reasonable ground of suspicion of guilt of the plaintiff, supported by circumstances sufficiently strong in themselves to warrant a cautious and prudent man in entertaining an honest belief that plaintiff is guilty: Newell on Malicious Prosecution, 595, 596, §§ 30 and 32.

. It is stated in 2 R. C. L. 451, § 6, as follows:

"Probable cause for an arrest has been defined to be a reasonable ground of suspicion supported by circumstances sufficiently in themselves to warrant a cautious man in believing the accused to be guilty. Yet probable cause does not depend on the actual state of the case in point of fact, as it may turn out upon legal investigation, but on knowledge of facts and circumstances, which would be sufficient to induce a reasonable belief in the truth of the accusation."

■ The question whether there are reasonable grounds for belief on the part of a police officer that a party is guilty, and to authorize an arrest without a warrant if the facts constituting such grounds are in dispute, is one for the determination of the jury: *Grau v. Forge,* 183 Ky. 521 (209 S. W. 369, 3 A. L. R. 642).

■ Defendants rely somewhat upon instructions from their superior officer, as mentioned above. It is no

defense to an action for false imprisonment that defendants, who made the arrest, were acting under the direction of a superior officer, since the arresting officer must himself be authorized to make the arrest under the provisions of our code. But the fact that policemen made an arrest under the direction of a superior officer is competent to be shown as affecting punitive or exemplary damages: *Grau v. Forge*, supra (including annotations in 3 A. L. R. 647).

■ In an action for false imprisonment, the burden rests on defendant to plead and prove affirmatively his justification for arrest, but in an action for malicious prosecution the plaintiff must allege and prove affirmatively the nonexistence of justification: *Roberts v. Thomas*, 135 Ky. 63 (121 S. W. 961, 21 Ann. Cas. 460), note, citing numerous authorities.

In *Cullen v. Dickinson*, 33 S. D. 27 (144 N. W. 656, 50 L. R. A. (N. S.) 987, Ann. Cas. 1916B, 115), the syllabus reads: "Upon the question of exemplary damages in an action against police officers for excluding an acceptable guest from a dance, evidence is admissible that they were acting under orders of a superior officer, but it can not be considered on the question of actual damages." Defendants quote from this case as follows:

"The plaintiff, however, claimed not only actual damages, but alleged facts which would entitle her to exemplary or punitive damages. The general denial raised an issue as to whether these acts were malicious. Under this issue it was competent for defendants to show their official position and all facts and circumstances attending the transaction, not as a defense by way of justification, but to prevent or lessen any recovery of exemplary damages. Under this issue it was competent for the defendants to introduce evidence tending to show that they acted in good faith and

without malice, even though such evidence might have a tendency to induce the jury to believe that the acts were justified.''

At the trial of this case, without reciting all the testimony, the defendants were permitted to testify as to their official position and all the facts and circumstances attending the transaction, of their talking with plaintiff at the corner of Twenty-fourth and Marshall streets and the instructions from their superior officer to ''bring plaintiff to the police station''. And, from the amount of the verdict, which was small, it seems that the jury did not take into consideration, or find, any sum for punitive or exemplary damages.

The only testimony of any material amount, which defendants complain was not admitted, was typewritten reports from the police department above referred to.

Fabinich stated that he could identify the robber of his store. It is not shown that the robber had a Ford coupe. The defendants did not endeavor to have him identify the plaintiff as the robber.

There was some ground for the jury to believe that the matter of the Fabinich robbery was not connected with the arrest. Defendants knew but little, if anything, about it at the time. Evidently the jury believed that the main grounds for defendants' suspicion was that plaintiff had a Ford coupe. The testimony strongly showed that defendants arrested plaintiff and detained him for questioning from about 7:30 until about 11:15 p. m.

The welfare of society imperatively demands that those who violate the law shall be promptly and speedily punished, and it is the duty of a policeman to make arrests where there is reasonable cause to be-

lieve that a party is guilty. A policeman is presumed to know the law regulating his duty and to act within the law. At the same time the law protects a person from a wrongful arrest or imprisonment.

An examination of the record shows that the court construed the pleadings in the case and instructed the jury in accordance with the law as above stated.

We find no reversible error in the record. Judgment of the circuit court is affirmed.

RAND and BAILEY, JJ., concur.

CAMPBELL, C. J., dissents.