Submitted on remand from United States Supreme Court March 4, 1985, affirmed
April 9, reconsideration denied July 3, petition for review denied September 30, 1986
(302 Or 36)

STATE OF OREGON,
*Respondent,*

*v.*

MICHAEL JAMES ELSTAD,
*Appellant.*

(29500; CA A24659)

717 P2d 174

Stephen J. Williams, Deputy Public Defender, Salem argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Virginia L. Linder, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were Dave Frohnmayer, Attorney General, and William F. Gary, Solicitor General, Salem.

Before Gillette, Presiding Judge, Pro Tempore, and Warden and Young, Judges.

WARDEN, J.

## WARDEN, J.

This case is before us on remand from the United States Supreme Court. *Oregon v. Elstad,* 470 US 298, 105 S Ct 1285, 84 L Ed 2d 222 (1985). We repeat the facts from our opinion in *State v. Elstad,* 61 Or App 673, 675, 658 P2d 552 (1983), *rev den* 295 Or 617 (1984):

> "On December 17, 1981, Officers McAllister and Burke went to defendant's home with a warrant for his arrest. His mother admitted the officers and directed them to defendant's bedroom. Both officers stayed in the bedroom while defendant dressed. He was not told that he was under arrest. Burke then took him to the living room, while McAllister went into the kitchen with defendant's mother. Burke testified:

> " 'I sat down [with defendant] and I asked him if he was aware of why Detective McAllister and myself were there to talk with him. He stated no, he had no idea why we were there. I then asked him if he knew a person by the name of Gross, and he said yes, he did, and also added that he heard that there was a robbery at the Gross house. And at that point I told [the defendant] that I felt he was involved in that, and he looked at me and stated, "Yes, I was there." '

> "After this conversation, defendant was placed in the officers' patrol car for transportation to the Polk County jail. On their way, the officers responded to a report of a robbery, and defendant was transported to the jail in another police car. Forty-five minutes to an hour elapsed before McAllister and Burke arrived at the jail. Defendant was then informed for the first time of his rights under *Miranda v. Arizona,* 384 US 436, 86 S Ct 1602, 16 L Ed 2d 694 (1966). He gave an oral confession; it was typewritten by McAllister as it was spoken. He then signed the two-page confession which is the subject of his motion to suppress. Burke, McAllister and defendant were the only persons present when the confession was given."

The case was argued as involving a violation of defendant's federal constitutional guaranties, and we agreed with him that the unconstitutionally obtained initial confession tainted the subsequent one and held that his motion to suppress should have been granted.

The United States Supreme Court reversed, holding under the Self-Incrimination Clause of the Fifth Amendment, that the failure to warn defendant of his *Miranda* rights before

the questioning at his home did not create a presumption that his second confession was compelled:

"It is an unwarranted extension of Miranda to hold that a simple failure to administer the warnings, unaccompanied by any actual coercion or other circumstances calculated to undermine the suspect's ability to exercise his free will so taints the investigatory process that a subsequent voluntary and informed waiver is ineffective for some indeterminate period. Though Miranda requires that the unwarned admission must be suppressed, the admissibility of any subsequent statement should turn in these circumstances solely on whether it is knowingly and voluntarily made." *Oregon v. Elstad, supra,* 470 US at ___ (84 L Ed 2d at 232).

On remand, defendant argues that, although the second confession does not violate the federal constitution, we should apply a stricter standard under Article I, section 12, of the Oregon Constitution.[1] We decline to do so and affirm defendant's conviction for first degree burglary.

Defendant urges us to reject the federal interpretation and "retain the integrity of the *Miranda* decision as a matter of state law." We have recently rejected a rule excluding *Miranda*-violative statements for all purposes. In *State v. Mills,* 76 Or App 301, 305, 710 P2d 148 (1985), *rev den* 300 Or 546 (1986), we declined to adopt a different standard under the Oregon constitution for *Miranda*-violative statements and their use for impeachment:

"Although we may interpret our own state constitution to provide greater protection to our citizens than United States Supreme Court interpretations of the federal constitution provide, *see Oregon v. Hass,* 420 US 714, 719, 95 S Ct 1215, 43 L Ed 2d 570 (1973); *State v. Caraher,* 293 Or 741, 750, 653 P2d 942 (1982); *State v. Soriano,* 68 Or App 642, 684 P2d 1220, *adopted* 298 Or 392 (1984), steps to adopt a stricter standard should be taken cautiously and be supported by reasoned analysis and sound policy considerations."

More recently, in *State v. Kell,* 77 Or App 199, 712 P2d 827 (1986), we also declined to depart from the federal standard when the defendant challenged the use of statements

---

[1] The Oregon constitutional issue was not argued in the trial court or in the earlier appeal. On remand to this court, we allowed his counsel to file a brief addressing the question of whether the admission of his confession in evidence violated Article I, section 12, of the Oregon Constitution.

made after he had invoked his right to counsel. In doing so we noted that,

"[a]lthough no authority outside Oregon can control our decision, there is no value in being different merely for the sake of the difference." 77 Or App at 203.

We do not find, nor has defendant identified, principles, precedents or criteria that persuade us to adopt a different rule. *See State v. Flores,* 280 Or 273, 279, 570 P2d 965 (1977); *State v. Kell, supra.* The United States Supreme Court's refusal to find a lingering psychological impact which vitiates the later *Miranda* warnings is predicated on the lack of compulsion:

"In Michigan v. Tucker, 417 US 433 (1974), the Court was asked to extend the Wong Sun fruits doctrine to suppress the testimony of a witness for the prosecution whose identity was discovered as the result of a statement taken from the accused without benefit of full Miranda warnings. As in [Elstad's] case, the breach of the Miranda procedures in Tucker involved no actual compulsion. The court concluded that the unwarned questioning 'did not abridge respondent's constitutional privilege * * * but departed only from the prophylactic standards later laid down by this Court in Miranda to safeguard that privilege.' 417 US at 446. Since there was no actual infringement of the suspect's constitutional rights, the case was not controlled by the doctrine expressed in Wong Sun that fruits of a constitutional violation must be suppressed. In deciding 'how sweeping the judicially imposed consequences' of a failure to administer Miranda warnings should be, * * * the Tucker Court noted that neither the general goal of deterring improper police conduct nor the Fifth Amendment goal of assuring trustworthy evidence would be served by suppression of the witness' testimony. The unwarned confession must, of course, be suppressed, but the Court ruled that introduction of the third-party witness' testimony did not violate Tucker's Fifth Amendment rights.

"We believe that this reasoning applies with equal force when the alleged 'fruit' of a noncoercive Miranda violation is neither a witness nor an article of evidence but the accused's own voluntary testimony. As in Tucker, the absence of any coercion or improper tactics undercuts the twin rationales—trustworthiness and deterrence—for a broader rule. Once warned, the suspect is free to exercise his own volition in deciding whether or not to make a statement to the

authorities." 470 US at ____ (84 L Ed 2d at 231). (Citations omitted.)

Compulsion is also what Article I, section 12, prohibits:

"Article I, section 12, forbids the state from compelling a person to testify against himself. *It is compulsion which is proscribed.* * * *." *State v. Sparklin,* 296 Or 85, 89, 672 P2d 1182 (1983). (Emphasis supplied.)

The historical facts support the conclusion that the *Miranda* warnings were properly administered. Defendant's first inadmissible statement does not preclude the admission of his later knowing and voluntary confession under either the Oregon or the federal constitutions.

Affirmed.