Argued and submitted November 22, 1991, affirmed September 9, 1992

## STATE OF OREGON,
*Respondent,*

*v.*

## ROBERT TERRANCE WHITE, SR.,
*Appellant.*

(DA 412332-9001; CA A67051)

838 P2d 605

Wayne Mackeson, Portland, argued the cause for appellant. With him on the brief was Des Connall, P.C., Portland.

Douglas F. Zier, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Richardson, Presiding Judge, and Deits and Durham, Judges.

RICHARDSON, P. J.

Durham, J., specially concurring.

### RICHARDSON, P. J.

Defendant appeals his conviction for menacing. ORS 163.190. He assigns error to the court's overruling of his demurrer, to its rejection of two requested jury instructions and to the denial of his motions to suppress statements that he made to the police. We affirm.

On January 3, 1990, defendant and his next-door neighbor, Keeney, got into an argument in front of their houses. Defendant brandished a flashlight at Keeney, went inside his house and returned with a gun. Keeney went inside his house and called to report to the police that defendant had threatened him with a gun. The police arrived and surrounded defendant's house. A dispatcher called defendant and ordered that he and his three sons emerge from the house. They did, and Officer Grady handcuffed defendant and placed him in a patrol car. Grady asked him if there were more people in the house and where any guns were located. Defendant said that there were no people inside but that there were firearms. He consented to a search for people. The police found no one in the house but found a padlocked room. They broke into it and discovered a revolver, a sawed-off shotgun and other weapons.[1]

Defendant was charged with menacing and pointing a firearm at another. ORS 163.190; ORS 166.190. He was acquitted of the firearm charge.

■ Defendant argues that the court should have granted his demurrer to the complaint, because it did not specify the act that constituted menacing. An objection that the accusatory instrument is not definite and certain may be raised by demurrer. ORS 135.610; ORS 135.630(6); ORS 135.640. However, defendant waived the objection, because he failed to object before pleading not guilty. *State of Oregon v. Holland*, 202 Or 656, 667, 277 P2d 386 (1954).

■ Defendant argues that the court should have given a jury instruction that specified the act that the state relied on

---

[1] The court suppressed the weapons that the police found inside the locked room. It concluded that they had searched beyond the scope of defendant's consent. The correctness of that order is not involved in this appeal.

to support the menacing charge.[2] He asserts that the jury could have found him guilty of menacing, even though only some jurors might have concluded that he had pointed a gun at another, while others might have concluded that he had brandished a flashlight. He relies on *State v. Boots*, 308 Or 371, 780 P2d 725 (1989), and argues that, under the court's instruction, the jury might not have found unanimously that he committed any particular act that constituted menacing.

*Boots* is inapplicable. There, the defendant was convicted of aggravated murder, which is a murder that requires proof beyond a reasonable doubt of at least one of 17 different acts. *See* ORS 163.095. Here, in contrast, no one act must be proven to support a conviction for menacing under ORS 163.190(1):

"A person commits the crime of menacing if by word or conduct the person intentionally attempts to place another person in fear of imminent serious physical injury."

The statute requires only that defendant acted by "word or conduct" *and* intentionally attempted to place Keeney in fear of imminent serious physical injury. The gravamen of the crime is the intentional attempt to place another person in fear. Defendant could have done several different acts and, if he intended thereby to attempt to place Keeney in fear, would have committed menacing. The jury did not have to agree

---

[2] Rather than request a complete jury instruction, *see State v. Van Gorder*, 56 Or App 83, 87, 641 P2d 584, *rev den* 293 Or 146 (1982), defendant requested that the court fill in the blank in this proposed instruction:

"A person commits the crime of menacing if, by word or conduct, he intentionally attempts to place another in fear of imminent serious physical injury.

"To establish the crime of menacing, the state must prove beyond a reasonable doubt each of the following elements:

"* * * * *

"(3) That Robert Terrance White, Sr. intentionally attempted to place Frank Keeney in fear of imminent serious physical injury by _____."

The court gave this instruction:

"Third, that Robert Terrance White, Sr., the defendant, intentionally attempted to place Frank Keeney in fear of imminent serious physical injury."

The court also instructed:

"This being a criminal case, each and every juror must agree on your verdict as to each count, so you should deliberate separately as to each count, and your verdict must be unanimous on each of those. *You must also agree upon the theory of the case.*" (Emphasis supplied.)

unanimously that he did any specific act that would cause fear in order to find him guilty of menacing.

■ For similar reasons, defendant is incorrect in arguing that the court should have instructed the jury that it had to find that he acted with the requisite mental state at the precise moment when he allegedly menaced Keeney. The court instructed the jury:

> "To establish the crime of menacing, the state must prove beyond a reasonable doubt each of the following elements: * * * that Robert Terrance White, Sr., the defendant, intentionally attempted to place Frank Keeney in fear of imminent physical injury. A person acts intentionally or with intent when that person acts with a conscious objective either to cause a particular result or to engage in particular conduct."

The instruction adequately informed the jury that it had to find that defendant acted intentionally when he attempted to put Keeney in fear of imminent physical injury. *See State v. Leppanen*, 253 Or 51, 453 P2d 172 (1969); *see also State v. Shaw*, 68 Or App 693, 697, 684 P2d 7 (1984).

■ In his fourth assignment, defendant contends that the court erred by not suppressing all statements he made after his arrest. He argues:

> "Defendant submits that his arrest was unlawful and that, as a result, all of his alleged statements should have been suppressed.
>
> "In *Payton v. New York*, 4[4]5 US 573, 100 SCt 1371, 63 LEd2d 639 (1980), the Supreme Court held that the fourth amendment prohibits a warrantless, non-consensual entry into a person's residence for the purpose of making a routine felony arrest. *Accord State v. Olson*, 287 Or 157, 164-65, 598 P2d 670 (1979); *State v. Peller*, 287 Or 255, 260-62, 598 P2d 684 (1979).
>
> "In the instant case, the fact that the officers did not cross the threshold of defendant's home is not dispositive. The command by Officer Grady via the communications center to have the members of defendant's household file out one at a time onto the porch and down to the sidewalk where they were taken into custody. [*sic*] All of the officers had their weapons drawn. Therefore, defendant's exposure to view was not consensual on his part."

In the trial court and here, the principal authorities that defendant cites are *Payton v. New York*, 445 US 573, 100 S Ct 1371, 63 L Ed 2d 639 (1980), and *State v. Hansen*, 295 Or 78, 664 P2d 1095 (1983).

*Payton* involved two cases consolidated for appeal. In both, the police had probable cause to make a felony arrest. Without a warrant, officers entered each defendant's residence and made an arrest. The Court held that the Fourth Amendment prohibits police from making an entry into a suspect's house in order to make a routine arrest, unless they have at least consent or an arrest warrant, or there are exigent circumstances.

In *State v. Hansen, supra,* the police unlawfully entered the defendant's residence, saw some marijuana, then "secured" the residence while an officer went to obtain a search warrant. The court held that the *unlawful entry* and securing of the premises constituted a seizure, for Fourth Amendment purposes, of the persons in the house and the contraband that was in plain view. Seizure of the house occurred because the officers *entered* it and prevented anyone from leaving or removing, hiding or disposing of contraband.

Those cases, and others that defendant cites, do not involve a question of the authority to make an arrest without a warrant. They involve *entry* of premises without a warrant. The distinction is material and is highlighted by the United States Supreme Court in *Payton* and in *United States v. Watson*, 423 US 411, 96 S Ct 820, 46 L Ed 2d 598 (1976).

In *Watson*, which predates *Payton*, the defendant was arrested while eating in a restaurant. He moved to suppress the evidence seized after his arrest on the ground that his arrest was unlawful, because it was a seizure without a warrant, in violation of the Fourth Amendment. The court held that the Fourth Amendment was not violated by a warrantless arrest in a public place if the police had probable cause to make the arrest. The court also held that it was immaterial whether there were exigent circumstances.

In *Payton*, the Court distinguished the holding in *Watson*, principally on the basis that, in *Watson*, the defendant was arrested in a place where he had no expectation of privacy. The critical point is not whether a person is seized

but *where* the seizure takes place. As the Court noted in *Payton*, " 'physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed.' " 445 US at 585 (quoting *United States v. United States District Court*, 407 US 297, 313, 92 Sup Ct 2125, 32 L Ed 2d 752 (1972)). Even if we were to agree with defendant that he and his house were seized when the police surrounded it and that that seizure was an arrest, there still was no entry into an enclave of defendant's privacy. Certainly, the telephone call ordering him to come out of his house was not an entry.

Defendant makes a leap from his conclusion that he was arrested when the police were deployed around his house to the conclusion that, because he was in his home, he was therefore arrested in his home and the police needed a warrant, consent or exigent circumstances in order to make the arrest. That is patently wrong. *See Payton v. New York, supra*. Defendant's arrest was not invalid, and the court correctly denied his motion to suppress on the basis of that contention.

■  In his final assignment, defendant argues that the statements that he made after he was advised of his rights should have been suppressed, because they were "tainted" by an earlier interrogation and statements that he made *before* he was advised. After defendant was taken into custody, an officer asked if there were other people in the house. Defendant said "no" and then gave his consent for the police to check for anyone else. The officer also asked defendant if there were guns in the house, and he responded affirmatively. Defendant seems to argue that a "warned" statement that follows an "unwarned" one is tainted as a matter of law. He is wrong. *Oregon v. Elstad*, 470 US 298, 105 S Ct 1285, 84 L Ed 2d 222 (1985).[3] The trial court found that his statements made before the warnings were voluntary and not coerced. Defendant does not claim otherwise. The court did not err.

Affirmed.

---

[3] Defendant urges that we adopt a different analysis under Article I, section 12, than applies under the Fifth Amendment. We decline. *See State v. Elstad*, 78 Or App 362, 366, 717 P2d 174, *rev den* 302 Or 36 (1986).

**DURHAM, J.,** specially concurring.

I agree with the majority's result but differ with the analysis of defendant's claim that his statements should be suppressed because he was unlawfully arrested in his house.

The police arrived at defendant's house in five patrol vehicles after receiving a report that he had pointed a firearm at his neighbor. The officers surrounded the house with their weapons drawn, an officer telephoned defendant and ordered that he and his three sons come out of the house with their hands up and walk to the sidewalk. They complied with the order, and the officers took them into physical custody at the sidewalk.

According to the majority, the absence of a physical entry by police into the house defeats defendant's claim that he could only be seized pursuant to an arrest warrant or under a showing of exigent circumstances justifying a seizure without a warrant. The majority relies on the statement in *Payton v. New York*, 445 US 573, 585, 100 S Ct 1371, 63 L Ed 2d 639 (1980), that "physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." Because the "telephone call ordering him to come out of his house was not an entry," 115 Or App at 110, the majority concludes that the defendant's arrest *on the sidewalk* required no arrest warrant or exigent circumstances.

The constitutional proscription against unreasonable seizures is not solely a restriction on the physical entry of dwellings, as the quotation from *Payton* implies. Defendant contends that he was seized in his home when the police telephonically ordered him to come out and he complied. The majority evades the issue by deciding that surrounding the house was not an entry into an enclave of privacy. The proper inquiry is whether the telephonic order and defendant's response violated his legal protection against a warrantless seizure. *Payton* does not answer the question.[1]

---

[1] *Payton* applied the Fourth Amendment to invalidate a warrantless forcible entry into defendant Payton's apartment, without exigent circumstances, that led to the seizure of a shell casing discovered inside in plain view and a warrantless arrest of defendant Riddick inside his home. The officers entered Riddick's home when his three-year-old son answered the door. The officers saw Riddick inside on a bed and gave him no opportunity to object or consent to the entry. In that context, the court's "chief evil" statement is correct, but it does not address the question whether a

*State v. Holmes*, 311 Or 400, 409, 813 P2d 28 (1991) holds:

> "[A] 'seizure' of a person occurs under Article I, section 9, of the Oregon Constitution (a) if a law enforcement officer intentionally and significantly restricts, interferes with, or otherwise deprives an individual of that individual's liberty or freedom of movement; or (b) whenever an individual believes that (a), above, has occurred and such belief is objectively reasonable in the circumstances." 311 Or at 409. (Footnote omitted.)

Although most seizures are accomplished by a physical apprehension, an officer's verbal assertion of authority over a citizen coupled with submission also constitutes a seizure. *California v. Hodari*, ___ US ___, 111 S Ct 1547, 1551, 113 L Ed 2d 690 (1991), discusses identical seizure law under the Fourth Amendment:

> "An arrest requires *either* physical force * * * *or*, where that is absent, *submission* to the assertion of authority.
>
> " 'Mere words will not constitute an arrest, while, on the other hand, no actual, physical touching is essential. The apparent inconsistency in the two parts of this statement is explained by the fact that an assertion of authority and purpose to arrest followed by submission of the arrestee constitutes an arrest. There can be no arrest without either touching or submission.' Perkins, The Law of Arrest, 25 Iowa L. Rev. 201, 206 (1940) (footnotes omitted)." (Emphasis in original.)

Defendant complied with a police order to leave his home. His acquiescence was not voluntary in any sense. Although we should encourage cooperation with such an order, we must also recognize that it effects a seizure of the citizen in his home when he submits to it.

The majority focuses on the location of the officers, but the citizen's location, not that of the officers, determines whether he was arrested in his home. Several cases make the point. In *Christ v. McDonald*, 152 Or 494, 52 P2d 655 (1936), two police officers approached a man who was sitting in his car, ordered his passenger out, got in and ordered him to drive

---

telephonic order like the one in this case effects a seizure of the occupant in the home when he complies with it.

to the police station. The court affirmed the officers' convictions for false imprisonment. It said:

"To constitute an arrest and imprisonment, it is not necessary that the party making the arrest should actually use violence or force towards the party arrested, or that he should even touch his body. If he profess to have authority to make the arrest, and he commands the person, by virtue of such pretended authority, to go with him, and the person obeys the order, and they go together in the direction pointed out by the person claiming the right to make the arrest, this is an arrest and imprisonment within the meaning of the law." 152 Or at 501.

In *State v. Rodriguez*, 110 Or App 544, 823 P2d 1026, *rev allowed* 314 Or 175 (1992), the state argued that the defendant was not arrested in his home because an officer knocked on the door, announced that the defendant was under arrest and made no entry until he answered the door and invited the officers inside. We said:

"This argument ignores the fact that defendant was in his home, behind a closed door, when [Agent] Valladolid knocked. He was not holding himself out to public scrutiny and would not have come within a step of the threshold, but for the knock at the door. Without an arrest warrant that was valid under the Oregon Constitution, defendant's arrest was unlawful." 110 Or App at 550.

In *State v. Vaughn*, 92 Or App 73, 757 P2d 441 (1988), officers approached a house, ordered all of the occupants, including the defendant, out of the house and directed them to lie on the ground under armed guard while an officer searched a vehicle. We held:

"Although defendant was not formally arrested until after the search, he was, in effect, arrested when the officers ordered him out of the house and onto the ground. ORS 133.005(1)." 92 Or App at 77.

In *United States v. Johnson*, 626 F2d 753 (9th Cir 1980), *aff'd* 457 US 537, 102 S Ct 2579, 73 L Ed 2d 202 (1982), officers knocked on the defendant's door and misrepresented their identity. When he opened the door, the officers displayed guns and badges, asked to speak with him and were admitted. The court concluded that the officers arrested the defendant in his home, even though they stood outside. The opinion contains a discussion of *Payton* that is helpful here:

"Johnson opened the door of his dwelling after the agents misrepresented their identities; thus, Johnson's initial exposure to the view and the physical control of the agents was not consensual on his part. *Cf. Payton*, 445 U.S. at 583, 100 S.Ct. at 1378 (entries were similarly nonconsensual). Moreover, Johnson's invitation to the agents to enter after the door was opened was hardly voluntary in light of the coercive effect of the weapons brandished by the agents.

"This case, on the other hand, differs from both of the situations addressed in *Payton*. The illegal search of Payton's home and the illegal arrest of Riddick did not occur until the police had entered the suspect's homes. 445 U.S. at 573-579, 100 S.Ct. at 1374-76. In this case, we are confronted with the situation where the suspect was arrested as he stood inside his home and the officers stood outside his home with drawn weapons. In these circumstances, *it is the location of the arrested person, and not the arresting agents, that determines whether an arrest occurs within a home*. Otherwise, arresting officers could avoid illegal 'entry' into a home simply by remaining outside the doorway and controlling the movements of suspects within through the use of weapons that greatly extend the 'reach' of the arresting officers.

"The *Payton* decision held that in the case of Obie Riddick the warrantless entry of the Riddick's home by police officers to arrest Riddick was not justified when his three-year-old son opened the door and they could see him sitting in bed. We doubt the Supreme Court would have reached a different result had the police stood at the doorway and immediately placed Riddick under arrest with weapons drawn.

"This case rather closely parallels that of the *Riddick* case discussed in *Payton*. Riddick did not voluntarily expose himself to warrantless arrest by the police as in a public place by allowing his three-year-old son to open the door of his home. Similarly, it cannot be said that Johnson voluntarily exposed himself to warrantless arrest by opening his door to agents who misrepresented their identities. In light of the strong language by the Court in *Payton* emphasizing the special protection the Constitution affords to individuals within their homes, we find that the warrantless arrest of Johnson, while he stood within his home, after having opened the door in response to false identification by the agents, constituted a violation of his Fourth Amendment rights." 626 F2d at 757. (Emphasis supplied.)

The cases compel the conclusion that the telephonic order to defendant, coupled with his submission to it, effected

an arrest of defendant in his home. Article I, section 9, of the Oregon Constitution required the police to have a warrant to arrest defendant in his home, unless exigent circumstances excused compliance with the warrant requirement. *State v. Olson*, 287 Or 157, 165, 598 P2d 670 (1979); *State v. Rodriguez, supra*, 110 Or App at 549.

The state has the burden to make an individualized showing of exigent circumstances. *State v. Parras*, 110 Or App 200, 203, 822 P2d 151 (1991).

"An exigent circumstance is a situation that requires the police to act swiftly to prevent danger to life or serious damage to property, or to forestall a suspect's escape or the destruction of evidence." *State v. Stevens*, 311 Or 119, 126, 806 P2d 92 (1991).

*State v. Olson, supra*, 287 Or at 165, said:

"It is true that the possession of a firearm can be an exigent circumstance where it has been demonstrated that the person to be arrested has in the immediate past performed a crime of violence committed with a firearm which 'would gravely endanger their [the police's] lives or the lives of others.' " (Brackets in original.)

Defendant contends that no exigent circumstance was shown here because he was in his house, there was no further confrontation with the neighbor, he did not threaten the officers and the officers had only a generalized concern that he might use his weapon to endanger officers. We are bound to construe the evidence in a manner consistent with the trial court's ultimate conclusion. *State v. Stevens, supra*, 311 Or at 127.

Applying that standard, I would conclude that the state established probable cause and exigent circumstances that justified the warrantless arrest. Defendant acknowledges that the police had responded to complaints made against him twice in the past, including those by neighbors who reported that he had displayed or discharged firearms. Keeney reported that defendant had threatened him with a gun just moments before he called the police. The police knew of that threat and the other threats and that defendant likely still possessed firearms in his house. Grady testified that the range of defendant's rifle made it dangerous to approach the house or to set up a police perimeter. The police were not

required to surround the house and wait until defendant yielded his firearm. *See State v. Peller*, 287 Or 255, 264, 598 P2d 684 (1979); *State v. Girard*, 276 Or 511, 515, 555 P2d 445 (1976).

Because defendant was lawfully arrested in his home, the court correctly denied his motion to suppress his statements to the officers. I concur in the majority's result for the reasons stated above.