Argued and submitted January 4, reversed and remanded July 10, 2002

# STATE OF OREGON,
*Respondent,*

*v.*

# KAREN RUTH DINSMORE,
*Appellant.*

## 99-09-234-CR; A111512

49 P3d 830

Robert J. McCrea argued the cause for appellant. With him on the reply brief were Robynne A. Whitney and McCrea, P.C.

Doug M. Petrina, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Edmonds, Presiding Judge, and Armstrong and Kistler, Judges.

KISTLER, J.

**KISTLER, J.**

Defendant was convicted of criminally negligent homicide.[1] On appeal, she assigns error to the denial of her motion to suppress evidence that the officers obtained after they detained and questioned her. She also assigns error to the trial court's finding that she was not eligible for optional probation. We reverse and remand.

In June 1999, just before 11:00 p.m., defendant was driving west on Highway 20 in Harney County.[2] On the highway ahead of her, two cars were stopped, waiting to turn left onto a side road. Mr. Overton was driving the first car. Ms. Overton and her son Ian were in the second car. Defendant failed to brake as she approached the two cars. Defendant's car crashed into Ms. Overton's car, went "flying up" over that car, and landed on Mr. Overton's car. Ms. Overton died almost instantly. Her son Ian was critically injured, and Mr. Overton suffered lesser injuries.

Defendant remained at the scene after the accident. When the police officers arrived, Deputy Johnson spoke with defendant and asked whether she had been involved in the accident. She denied any involvement. While setting out flares, Deputy McCall saw damage to defendant's vehicle and realized that defendant had been involved. McCall spoke with Johnson, telling him that he had asked defendant to remain at her car. Defendant complied with that request. After a brief time, the two deputies asked a third person, Officer Hodge, to supervise defendant at her car. They wanted to make sure that defendant was safe and also that she did not leave. Hodge supervised defendant for approximately an hour and a half. During that time, defendant asked to leave with a tow truck driver so that she could go to the bathroom. After discussing defendant's request with another officer, Hodge refused it.

---

[1] The judgment of conviction is based on defendant's conditional no-contest plea. ORS 135.335(3).

[2] We take the facts from the hearing on defendant's motion to suppress and state the facts consistently with the trial court's ruling. *See Ball v. Gladden,* 250 Or 485, 487, 443 P2d 621 (1968).

While defendant was in her car, Deputy Johnson was interviewing witnesses, taking care of the injured, and investigating the crash site. During that process, he learned that a witness had seen the taillight and turn signals of the Overtons' cars as they stopped, waiting to turn off the highway. Another witness told Johnson that defendant appeared to be driving very fast. Finally, Johnson saw that defendant's car had not left any skid marks on the road before it struck the first car. Johnson concluded that the only explanation for the accident was that defendant had failed to stop. Although he did not know why she had not stopped, he concluded that it was likely that she had recklessly or negligently caused Ms. Overton's death.

After completing his initial investigation, Johnson approached defendant at 1:15 a.m. in order to ask her about the accident. As he did so, he noticed a faint odor of alcohol on her breath. Johnson began questioning defendant without first advising her of her *Miranda* rights, and defendant admitted drinking one beer approximately nine hours earlier, at 4:00 p.m. She also said that she had been using medications for high blood pressure and allergies. Johnson asked defendant whether, as she approached the Overtons' cars, she had seen brake or taillights or blinkers. Defendant denied having seen anything. He also asked her about her speed and whether she was trying to get somewhere quickly. Defendant estimated that she had been traveling at about 58 miles an hour and denied that she had needed to get anywhere quickly.

At the end of the interview, Johnson placed defendant under arrest for reckless driving. He removed her from her car, handcuffed her, and advised her of her *Miranda* rights. Johnson then asked defendant to perform field sobriety tests, "if she would," to which defendant agreed. Just before beginning the tests, Johnson asked defendant another series of questions, covering some of the same material that he had covered in the 1:15 a.m. interview. He asked her again whether she had something to drink, and defendant admitted to having one drink. He did not, however, ask her, as he had earlier, whether she had seen headlights or taillights or about her speed of travel. Defendant then performed field sobriety tests, and Johnson arrested her for driving under the influence of intoxicants (DUII).

Johnson took defendant to the police station, where she agreed to take a blood alcohol test. The test revealed that her blood alcohol content was .06. The state indicted defendant for second-degree manslaughter and DUII. Before trial, defendant filed a motion to suppress: (1) evidence that Johnson had detected alcohol on her breath when he approached her at 1:15 a.m.; (2) the statements that defendant made to Johnson during the 1:15 a.m. interview; (3) the results of the field sobriety tests; and (4) the results of the breath test. Specifically, she argued that she had been unlawfully detained, that she had been taken into custody without probable cause, and that she had been interrogated without the benefit of *Miranda* warnings. She also argued that Johnson lacked probable cause to administer the field sobriety tests.

The trial court denied defendant's motion to suppress, holding that she had been lawfully detained and that Johnson had probable case to arrest her before beginning the first interview. Although Johnson had not given defendant *Miranda* warnings before speaking with her at 1:15 a.m., the court concluded that *Miranda* warnings were not required because the circumstances were not compelling. It also found that defendant's statements were voluntary. Finally, the trial court ruled that defendant had voluntarily consented to the field sobriety tests. After the trial court's ruling, defendant entered a conditional no-contest plea to criminally negligent homicide, *see* ORS 135.335(3), and the court entered a judgment of conviction based on her plea.

On appeal, defendant assigns error to the trial court's ruling denying her motion to suppress.[3] Her arguments on appeal mirror those raised below. She argues that the officers acted unconstitutionally when they directed her to remain at the scene, questioned her about the accident without first giving her *Miranda* warnings, and administered the field sobriety tests.[4] We address each of her arguments in turn.

---

[3] She also assigns error to the trial court's finding that she was not eligible for optional probation. However, because we reverse on the first assignment of error, we do not reach her second.

[4] Defendant bases her arguments on Article I, section 9, and Article I, section 12, of the Oregon Constitution. Although she mentions the Fifth and Sixth Amendments to the United States Constitution, she does not analyze those constitutional provisions separately; that is, she fails to explain why her federal claims should be

Defendant argues initially that the officers arrested her without probable cause by detaining her for approximately two hours at the accident site. She also contends that Johnson exploited that illegality first when he detected alcohol on her breath at 1:15 a.m. and later when he questioned her. The state responds that it did not seize defendant until Johnson formally arrested her for reckless driving after the 1:15 a.m. interview. Alternatively, the state argues that Johnson had both subjective and objective probable cause to arrest defendant before he approached her at 1:15 a.m.

■ "[A] 'seizure' of a person occurs under Article I, section 9, of the Oregon Constitution * * * if a law enforcement officer intentionally and significantly restricts, interferes with, or otherwise deprives an individual of that individual's liberty or freedom of movement[.]" *State v. Holmes*, 311 Or 400, 409, 813 P2d 28 (1991). In this case, the officer told defendant to stay in her vehicle; he assigned another officer to watch her to make sure that she did not leave; the officers denied her request to leave the scene so that she could go to the bathroom; and the detention lasted for at least an hour and a half.

■ It may be, as the state argues, that an officer's request that a motorist stay briefly at an accident scene to provide information would not constitute a seizure for the purposes of Article I, section 9. *See Holmes*, 311 Or at 410-11; *State v. Blair/Vanis*, 171 Or App 162, 169-70, 14 P3d 660 (2000), *rev den* 332 Or 137 (2001). Here, however, the officers refused to let defendant leave the accident scene for at least an hour and a half. The duration of the restraint alone is sufficient to convert the officers' actions into a seizure and, more specifically, into an arrest.[5] *See State v. McKinney*, 174 Or App 47, 51-52 and n 3, 23 P3d 386 (2001), *rev den* 333 Or 260 (2002) (identifying the characteristics that distinguish an arrest from a stop).

Having concluded that defendant was arrested before the interview, we turn to her claim that the officers

---

decided differently from her state claims. Accordingly, we consider only her Oregon constitutional claims and do not reach any federal claims that she might have.

[5] A seizure may be either a stop or an arrest. *See Holmes*, 311 Or at 407.

lacked probable cause to arrest her. Defendant argues initially that the state presented no evidence that the officers had probable cause at the point that the detention ripened into an arrest; that is, she argues that she was arrested at some point during the hour and a half detention and that the state failed to prove when, during that period, it developed probable cause that she may have been guilty of a crime. Even if defendant's first argument were correct, the state learned nothing from defendant until the officer approached her at 1:15 a.m. Any deprivation of defendant's rights before then did not result in any evidence that would be subject to a motion to suppress. *State v. Schwartz*, 173 Or App 301, 307, 21 P3d 1128, *rev den* 333 Or 162 (2001). It follows that the only relevant question on defendant's Article I, section 9, claim is whether probable cause existed when Johnson approached defendant at 1:15 a.m. and detected alcohol on her breath. We turn to that question.

■    Under Article I, section 9, probable cause has two components: "An officer must subjectively believe that a crime has been committed and thus that a person or thing is subject to seizure, and this belief must be objectively reasonable in the circumstances." *State v. Owens*, 302 Or 196, 204, 729 P2d 524 (1986). As we understand defendant's argument, she does not argue that Johnson lacked objective probable cause at 1:15 a.m. Rather, she reasons that Johnson did not have subjective probable cause at that time. In her view, Johnson did not subjectively believe that defendant had committed a crime until after the 1:15 a.m. interview.

Defendant bases her argument on testimony elicited from Johnson on cross-examination:

"Q:   Now these three things [obtained as a result of the 1:15 a.m. interview], the odor of alcohol, the fact that she admitted that she'd had something to drink, and the fact that she claimed not to have seen any lights of any sort at the scene of the accident were very important to you, isn't that correct?

"A:   Yes.

"Q:   And they were an essential or a substantial part of your deciding to arrest her for reckless driving, correct?

"A: Yes."

Defendant contends that, if the 1:15 a.m. interview was a substantial or essential part of Johnson's decision to arrest her for reckless driving, then the trial court could not have rationally found that he had subjective probable cause *before* beginning the interview.

■■    In response, the state points to testimony it elicited on redirect:

"Q:   Based on the conditions, the weather, the circumstances, was there any explanation for [the accident]?

"A:   Before my interview with [defendant]?

"Q:   Yes.

"A:   The only explanation was that she just failed to stop.

"Q:   And what—so based on that, did you form an opinion as to any potential criminal acts or violations that [defendant] had committed prior to even contacting her at 1:15 a.m.?

"A:   Yes.

"Q:   And what acts?

"A:   That she was reckless.

"* * * * *

"Q:   And did the results of that accident—did you have any thoughts or did [the fact that there was one person killed and one person who was seriously injured] factor in at all as any potential criminal acts that had occurred?

"A:   Yes.

"Q:   And what crimes were you considering at that point?

"A:   Negligent homicide, manslaughter, those types of issues."

Given that evidence, the trial court found that, even though the 1:15 a.m. interview was a substantial factor in Johnson's decision to place defendant under arrest, Johnson "had a subjective probable cause basis prior to the [1:15 a.m.] interview." The question whether an officer subjectively

believes that he or she has probable cause to arrest presents a question of fact for the trial court. *State v. Belt*, 325 Or 6, 11-12, 932 P2d 1177 (1997). We are bound by the trial court's factual finding as long as there is evidence in the record to support it. *State v. Juarez-Godinez*, 326 Or 1, 7, 942 P2d 772 (1997). There is sufficient evidence here.

■    Before the 1:15 a.m. interview, Johnson had obtained evidence that established objective probable cause to believe that defendant had been driving recklessly when she hit the Overtons' cars. The trial court could have inferred solely from that evidence that Johnson subjectively believed that defendant had committed that crime. *See Belt*, 325 Or at 11-12. Although defendant argues that Johnson's testimony on cross-examination negates that inference because it conclusively demonstrates that he did not decide to arrest defendant until after he spoke with her, defendant's argument fails to distinguish two separate questions.

The question of when Johnson formed a subjective belief that defendant had driven recklessly is separate from the question of when he decided to arrest her for that crime. Probable cause usually precedes the decision to arrest, and an officer may have probable cause but choose not to arrest a suspect until a later time, if at all. Nothing in Johnson's testimony compelled the trial court to conclude that he did not have the requisite subjective belief until after he interviewed defendant. Conversely, the evidence permitted the trial court to find that Johnson subjectively believed that he had probable cause before he spoke with defendant but did not decide to arrest her until afterwards. *See Belt*, 325 Or at 10-11. It follows that neither Johnson's detection of the odor of alcohol nor his interview with defendant was the product of an unlawful arrest.

We turn to defendant's Article I, section 12, argument. She contends that, even if her statements were not a product of an illegal arrest, she was in custody when Johnson questioned her without the benefit of *Miranda* warnings and that the statements obtained during the 1:15 a.m. interview should be suppressed as well as her later statements. The state argues that Johnson was not required to give *Miranda*

warnings until he formally arrested defendant for reckless driving after the 1:15 a.m. interview.

*Miranda* warnings are required when a suspect is "in full custody" or is in a "setting which judges would and officers should recognize to be 'compelling.' " *State v. Smith*, 310 Or 1, 7, 791 P2d 836 (1990) (quoting *State v. Magee*, 304 Or 261, 265, 744 P2d 250 (1987)). In determining whether either condition exists, the relevant inquiry is "how a reasonable [person] in the suspect's position would have understood his [or her] situation." *State v. Wandle*, 75 Or App 746, 750, 707 P2d 1281 (1985), *rev den* 300 Or 605, *cert den* 479 US 888 (1986) (quoting *Berkemer v. McCarty*, 468 US 420, 442, 104 S Ct 3138, 82 L Ed 2d 317 (1984)).

We have previously considered whether persons questioned at the scene of automobile accidents have been in custody for the purposes of requiring *Miranda* warnings. In *State v. Hackworth*, 69 Or App 358, 685 P2d 480 (1984), police were called to an accident scene, where they found the defendant attempting to drive away. The officers asked the defendant several questions and, after about 15 minutes, formally arrested him and read him *Miranda* warnings. The defendant moved to suppress his answers to the questions that the officers had asked before he was given *Miranda* warnings. We held that the questions were not part of a custodial interrogation, stating that

> "[a] motorist questioned at an accident scene, especially when there is no serious injury, reasonably expects that he will have to answer some questions and have his license and registration checked and that shortly he or the officers will depart."

*Id.* at 363-64. Similarly, we held in *Wandle* that

> "[a]ny reasonable person involved in a fatal automobile accident would expect to have to participate in a thorough investigation. * * * [A] reasonable person would usually be willing to tolerate more involvement with the police for a serious accident before concluding that he is in custody than he would for a minor accident."

75 Or App at 752. We also noted in *Wandle* that there was no evidence that the defendant could not have walked away at any time.

■     In this case, the accident was clearly a serious one, with one fatality and one critical injury. While we agree that a reasonable person would expect to give information and participate in an investigation of such an accident, the duration and scope of the detention here go well beyond the officers' reasonable need to investigate the accident. Defendant was told to remain at the scene, was placed under an officer's supervision for at least an hour and a half, and was specifically denied permission to leave to go to the bathroom. Never during this period of time was she asked for her license, registration, or other information related to the accident. Further, unlike in *Wandle*, defendant was not free to walk away. By the time Johnson approached defendant at 1:15 a.m., she had been at the accident scene for approximately two hours. Consistently with our conclusion that defendant's detention rose to the level of an arrest, we conclude that, at a minimum, she was in compelling circumstances and that Johnson could question her only after giving her *Miranda* warnings. *See State v. Werowinski*, 179 Or App 522, 532, 40 P3d 545 (2002). Because no *Miranda* warnings were given, the statements that defendant made during the 1:15 a.m. interview should have been suppressed.

It does not necessarily follow, however, that any statements that defendant made after she received *Miranda* warnings should have also been suppressed. In this case, after Johnson spoke with defendant at 1:15 a.m., he arrested her for reckless driving; advised her of her rights under *Miranda*, and then asked her some of the same questions that he previously had asked her. Johnson asked her whether she had had anything to drink, and defendant admitted to drinking one beer late that afternoon. He also asked her to take the field sobriety tests, which she agreed to do. Johnson did not, however, ask her about the cause of the accident or whether she had seen taillights or blinkers on the Overtons' cars—questions that defendant had answered during the 1:15 a.m. interview.

When a statement or confession is obtained in violation of *Miranda*, that illegality does not "automatically render inadmissible a subsequent confession obtained after proper *Miranda* warnings are given." *State v. McCoy*, 165 Or App 499, 504, 998 P2d 709, *rev den* 331 Or 193 (2000) (citing *Oregon v. Elstad*, 470 US 298, 318, 105 S Ct 1285, 84 L Ed 2d 222 (1985)); *State v. White*, 115 Or App 104, 110 n 3, 838 P2d 605 (1992).[6] As we explained,

"[i]f the unwarned confession was obtained using deliberately coercive or improper tactics calculated to break the suspect's will, then the subsequent confession is not admissible unless there is a break in the events sufficient to prevent the coercion from carrying over from the earlier confession. However, the court will not presume a 'coercive effect where the suspect's initial inculpatory statement, though technically in violation of *Miranda*, was voluntary.' "

*McCoy*, 165 Or App at 504 (citations omitted). If an officer later gives *Miranda* warnings to a suspect who has given "a voluntary but unwarned statement[, that advice] ordinarily should suffice to remove the conditions that precluded admission of the earlier statement." *Elstad*, 470 US at 314.

Defendant does not argue that any coercive or improper tactics were used in the 1:15 a.m. interview, when Johnson obtained an unwarned confession from defendant about her alcohol intake, the cause of the accident, or whether she had seen brake or taillights. We see no reason why defendant's statements from the second interview, occurring after proper *Miranda* warnings had been given, should be suppressed. Defendant's statements after she received *Miranda* warnings are admissible.

In her next argument, defendant contends that the field sobriety tests were unlawfully administered and that Johnson exploited the illegality of the 1:15 a.m. interview in order to obtain them. Specifically, she argues that she did not voluntarily consent to the tests and that, even if she did, that

---

[6] We reaffirmed in *White* that the same analysis applies under Article I, section 12, that the Court applied under the Fifth Amendment in *Elstad*. *See also State v. Elstad*, 78 Or App 362, 366, 717 P2d 174, *rev den* 302 Or 36 (1986).

consent was tainted by the illegality of the 1:15 a.m. interview.[7] For its part, the state argues that, because the trial court found that defendant voluntarily consented to perform the tests and because there is evidence in the record to support its finding of historical fact, we are effectively bound by its decision.

■ The evidence in the record supports the trial court's conclusion that defendant voluntarily consented. Johnson tape recorded the conversation he and defendant had regarding the field sobriety tests. The tape reveals that Johnson first asked, "Because you've been drinking, I want to just do some tests, okay?" Although her response is not completely clear, she appears to have said, "Hm-hum." The tape then reveals that Johnson again inquired about the test, saying, "I just want to ask you to perform some tests, if you would," to which defendant does not audibly respond on the tape. At trial, Johnson testified that he asked her to perform field sobriety tests and that, in response, defendant "agreed." On cross-examination, he stated that she gave an "affirmative answer." Given this evidence, the trial court reasonably could find that Johnson asked for, and received, consent. We also find no reason to disagree with the court's legal conclusion that defendant voluntarily consented to take the field sobriety tests. *See Ball*, 250 Or at 487 (holding that the question whether a defendant acted voluntarily presents a question of law for the court).

A determination that defendant consented, however, does not necessarily resolve whether, despite the consent, Johnson exploited the prior illegal 1:15 a.m. interview in obtaining defendant's consent to the field sobriety tests. We have held that exploitation occurs when "unlawful police conduct reveals information that focuses police attention on the defendant" and prompts the police to conduct a search that they would not have otherwise performed. *State v. Stanley*, 139 Or App 526, 535, 912 P2d 948 (1996), *rev'd on other*

---

[7] In *State v. Nagel*, 320 Or 24, 31, 880 P2d 451 (1994), the Supreme Court held that, under Article I, section 9, of the Oregon Constitution, field sobriety tests constitute a search. Consequently, to conduct the tests, an officer must either have a search warrant or the search must fall into one of the recognized exceptions to the warrant requirement. *Id.*

*grounds* 325 Or 239 (1997). However, a "but for" causal connection is not sufficient to require suppression; instead, suppression is required only when the police have exploited their prior unlawful conduct in order to obtain evidence. *Schwartz*, 173 Or App at 307.

For instance, in *Schwartz*, the defendant claimed that the police unlawfully obtained and executed a search warrant. He argued that the police exploited this unlawful conduct by then seeking his consent to be interviewed. We explained, however, that the police were interested in talking to the defendant even before they obtained the warrant. *Id.* at 307. Furthermore, the evidence failed to demonstrate that anything found during the search prompted the police to ask questions that they would not have asked without that search. *Id.*

In this case, we are not persuaded that Johnson exploited the 1:15 a.m. interview by asking defendant to perform field sobriety tests. Excluding the information that came from the 1:15 a.m. interview, Johnson still had the following information: an odor of alcohol could be detected on defendant; defendant had admitted, after having been read her *Miranda* rights, to drinking; witnesses had seen defendant traveling at a high rate of speed; witnesses could see the taillights and turn signals of the Overtons' cars; and there were no skid marks before the accident. The only information that was not available to Johnson because of the prior illegality was that defendant was taking medications and that she did not see signals or taillights. These facts, however, were not likely to focus Johnson's attention on her or lead him to ask questions or request that she perform sobriety tests that he would not have otherwise. With the information that he legitimately had in hand, his attention was already focused on defendant's sobriety. The same reasoning applies to Johnson's request that defendant take the breath test.

We accordingly uphold the trial court's ruling denying defendant's motion to suppress in every respect but one: The court should have suppressed the statements that defendant made during the 1:15 a.m. interview. Although that evidence was not admissible, the state argues that we should affirm the trial court's judgment because any error was

harmless. Defendant, in turn, contends that, because she entered a conditional plea under ORS 135.335(3), harmless error analysis is inappropriate.

ORS 135.335(3), which governs conditional pleas, provides:

> "With the consent of the court and the state, a defendant may enter a conditional plea of guilty or no contest reserving, in writing, the right, on appeal from the judgment, to a review of an adverse determination of any specified pretrial motion. A defendant who finally prevails on appeal may withdraw the plea."

ORS 135.335(3) provides that a defendant may enter a conditional plea and reserve the right to appeal. More to the point, it provides that, if a defendant prevails on appeal, he or she may withdraw the plea. Employing a harmless error analysis would defeat that statutory right. Defendant may, on remand, decide that she wishes to withdraw her plea and go to trial, or she may choose, in light of her limited success on appeal, not to withdraw it. The legislature, however, has left that choice to defendant.

Reversed and remanded.