Argued and submitted December 17, 2004, convictions for assault in the third degree, assault in the fourth degree, driving while under the influence of intoxicants, and reckless driving reversed; conviction for manslaughter in the second degree reversed and remanded for new trial July 6, 2005

# STATE OF OREGON,
*Respondent,*

*v.*

# KAREN RUTH DINSMORE,
*Appellant.*

## 9909234CR; A122052

116 P3d 226

Robert J. McCrea argued the cause for appellant. With him on the briefs was McCrea, P.C.

Doug M. Petrina, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Edmonds, Presiding Judge, and Wollheim and Schuman, Judges.

EDMONDS, P. J.

## EDMONDS, P. J.

Defendant appeals from convictions for manslaughter in the second degree, ORS 163.125, assault in the third degree, ORS 163.165, assault in the fourth degree, ORS 163.160, driving under the influence of intoxicants (DUII), ORS 813.010, and reckless driving, ORS 811.140, arising out of a three-vehicle automobile accident in June 1999 in Harney County. On appeal, she makes four assignments of error. As a result of our holdings regarding the first and second assignments of error, we reverse all of defendant's convictions and remand for a new trial on the charge of manslaughter in the second degree.

Because her second assignment of error is dispositive of all of the charges on which defendant was convicted except one, we discuss it first. This is the second time that this case has been before us. Defendant was originally indicted on the charges for which she now stands convicted. The assault charges involve different victims from the victim of the homicide. In August 2000, before the case went to trial on the indictment, the state and defendant entered into a plea agreement. Under the agreement, defendant agreed to enter a conditional plea of "no contest" to the charge of criminally negligent homicide, reserving the right under ORS 135.335(3) to appeal the denial of her pretrial motions to exclude evidence. The plea agreement also provided, in part, that the charge of criminally negligent homicide would be considered as a lesser included charge of the count of the indictment charging manslaughter in the second degree. The agreement also provided that "the State agrees to dismiss the remaining counts in the indictment." However, the agreement made no reference to what the parties contemplated in the event that defendant's appeal succeeded. Pursuant to the agreement, defendant entered a plea to the charge of criminally negligent homicide, and the trial court dismissed all of the counts with the exception of the manslaughter count.

Defendant then appealed her conviction for criminally negligent homicide to this court. On appeal of that conviction, we reversed, *State v. Dinsmore*, 182 Or App 505, 515, 519, 49 P3d 830 (2002), holding that, under the attendant circumstances, a police officer investigating the accident was

required to give *Miranda* warnings to defendant before questioning her at the accident scene. We remanded the case to the trial court, pointing out that "[d]efendant may, on remand, decide that she wishes to withdraw her plea and go to trial, or she may choose, in light of her limited success on appeal, not to withdraw it." *Id.* at 519.

In September 2002, defendant appeared in the trial court after the case was remanded from this court. She withdrew her plea to the charge of criminally negligent homicide, at which time the state moved to reinstate the charges in the original indictment. After soliciting briefing from the parties, the trial court ordered in January 2003 "that the previous order of this court dismissing counts II, III, IV and V of the indictment in this case is vacated and that each of these counts, as well as the charge of Manslaughter in the Second Degree, as alleged in count I of the indictment, is reinstated for prosecution."[1] Defendant entered "not guilty" pleas to all the counts and went to trial. A jury found her guilty on all counts, and this appeal ensued.

■        In her second assignment of error, defendant argues that "the trial court erred in reinstating previously dismissed charges after [she] withdrew her no contest plea." The parties' arguments focus on the terms of the plea agreement. According to defendant, the state unambiguously "bargained for and received a conditional plea * * * in exchange for dismissing all of the other charges." Under her view of the effect of the plea agreement, after the other charges had been dismissed, the only remaining charge that the state could try her on was criminally negligent homicide. The state responds that, when defendant withdrew her plea to that charge, she repudiated the entire plea agreement, which then permitted the state to try her on all the counts in the original indictment. Moreover, the state notes that the manslaughter charge was never formally dismissed.

Assuming that the state's premise is correct, there is a second part of the issue that the state's argument does not address. Defendant's assignment of error challenges the

---

[1] Counts II, III, IV, and V reflect the charges on which defendant was subsequently convicted, other than the charge of manslaughter in the second degree.

authority of the trial court to reinstate the charges in the indictment after vacating its orders of dismissal.[2] ORS chapter 132, pertaining to grand jury proceedings and accusatory instruments, does not contain a statute that authorizes a trial court to reinstate counts in an indictment after they have been dismissed or adjudicated. ORS 135.753 explains the effect of a dismissal by the trial court:

"(1)   If the court directs the charge or action to be dismissed, the defendant, if in custody, shall be discharged. If the defendant has been released, the release agreement is exonerated and security deposited shall be refunded to the defendant.

"(2)   An order for the dismissal of a charge or action, as provided in ORS 135.703 to 135.709 and 135.745 to 135.757, is a bar to another prosecution for the same crime if the crime is a Class B or C misdemeanor; but it is not a bar if the crime charged is a Class A misdemeanor or a felony.

"(3)   If any charge or action is dismissed for the purpose of consolidation with one or more other charges or actions, then any such dismissal shall not be a bar to another prosecution for the same offense."

In *State v. Robinson*, 158 Or App 494, 974 P2d 713 (1999), we considered circumstances that, while not directly analogous to this case, are instructive as to the effect of ORS 135.753. In *Robinson*, the state appealed from a pretrial order suppressing evidence. Two days after the trial court entered an order suppressing the evidence, the court entered a separate order pursuant to the prosecutor's request under ORS 135.755 dismissing the case.[3] On appeal, we concluded that the state's appeal was moot because of the order dismissing the case. *Robinson*, 158 Or App at 500. We commented, "[I]f the state is suggesting that the trial court may set aside the dismissal under these circumstances, we are

---

[2] Generally speaking, there are three kinds of criminal accusatory instruments: a grand jury indictment, a district attorney's information, and a complaint. ORS 131.005(1).

[3] ORS 135.755 provides, in part, that "[t]he court may, either on its own motion or upon the application of the district attorney, and in the furtherance of justice, order the proceedings to be dismissed."

aware of no authority for the trial court to do so." *Id.* at 499. After referring to ORS 135.753, we explained,

> "Thus, ORS 135.755 does not contemplate a trial court 'setting aside' a dismissal and reviving a prosecution. If the state wishes to pursue criminal charges after a dismissal under ORS 135.755, it may either appeal the dismissal under ORS 138.060(1), or it may reindict the defendant if it may do so under the limitations set forth in ORS 135.753."

*Id.* at 500.

A similar problem exists here as to the counts in the indictment that were dismissed by the trial court. The court's dismissal of those counts constituted a final disposition of them; at the time of their dismissal, those charges were no longer pending in the trial court, and we are unaware of any statutory authority that authorized the trial court to revive them in light of the provisions of ORS 135.753. Our reasoning is bolstered by Article VII (Amended), section 5, of the Oregon Constitution. Under that constitutional provision, only the grand jury can return an indictment, and, once issued, the substance of an indictment may not be amended by a court. Rather, an indictment must be resubmitted to the grand jury if it is to be amended substantively. *State v. Russell*, 231 Or 317, 322-23, 372 P2d 770 (1962). By reviving the dismissed charges after a final disposition of them had been made, the trial court effectively permitted the state to re-indict defendant without grand jury authorization, similar to what would occur if a trial court undertook to order a substantive amendment to an existing indictment without resubmission to the grand jury. Consequently, we are required to reverse defendant's convictions for assault, DUII, and reckless driving.

We turn now to the conviction for manslaughter in the second degree. The state argued to the trial court that the manslaughter charge was not dismissed by the August 2000 order because the order does not mention that count. The parties' plea negotiations in 2000 were governed by ORS 135.405 to 135.465. ORS 135.405(3)(b) authorizes a district attorney "[t]o seek or not to oppose dismissal of the offense charged if the defendant enters a plea of guilty or no contest

to another offense reasonably related to the defendant's conduct[.]'" After the Harney County District Attorney consented to the replacement of the manslaughter charge with the criminally negligent homicide charge for purposes of the parties' plea agreement, and after the entry of a judgment of conviction on the latter charge, any prosecution on the manslaughter charge was precluded so long as the judgment of conviction for criminally negligent homicide remained a final judgment.

However, defendant appealed that judgment of conviction, and on appeal we reversed. The effect of our reversal was to render the judgment of conviction for criminally negligent homicide not final under ORS 131.525(1)(a), which then left pending the indicted charge for manslaughter in the second degree, which the plea to the lesser included offense of criminally negligent had been entered.[4] Defendant's withdrawal of her plea on remand permitted the state to prosecute her on any pending charge, which included the manslaughter charge.[5] Thus, although the trial court apparently undertook to reinstate the indictment for manslaughter in the second degree without grand jury action, in fact, no reindictment of the charge was required because the charge continued to be pending by operation of law once the judgment of conviction for criminally negligent homicide had been overturned. It follows that no error occurred when defendant was retried on the charge of manslaughter in the second degree.

As noted, the parties on appeal focus their efforts on the terms of the plea agreement and the conditional plea made under ORS 135.335(3). As we consider the import of the state's arguments in light of our holding that the trial court had no statutory authority to revive the counts of the indictment that it dismissed, we understand the state to assert that defendant consented to the refiling of the original charges against her by the terms of her plea agreement. Although the state does not make the precise argument, it

---

[4] ORS 131.525(1)(a) provides, in part, that a previous prosecution is not a bar to subsequent prosecution when the previous prosecution was properly terminated by "an appeal upon judgment of conviction."

[5] The other charges were not pending at the time because they had been dismissed.

could be reasoned as follows: Under Oregon law, defendants are able to consent to the filing of a district attorney's information as the instrument that initiates a prosecution in circuit court.[6] The terms of a plea agreement could operate as a defendant's consent to the refiling of the dismissed charges in the event the defendant prevailed on appeal.

Here, however, the plea agreement contains no terms regarding what would occur in the event of a successful appeal by defendant. Under those circumstances, we will not impute to defendant a waiver of reindictment. Although it is correct, as the state argues, that when defendant repudiated her plea agreement, the state was relieved of its obligations under the agreement, the correctness of that proposition by itself does not authorize the revival of the dismissed charges, either expressly or implicitly under the terms of the plea agreement. Rather, if the state desired to proceed on the dismissed charges after defendant withdrew her plea, the state should have sought grand jury authorization to file new charges against her.

The state also argues that "[a] trial court can restore previously dismissed counts if a defendant withdraws her conditional plea" entered under ORS 135.335(3), which provides:

> "With the consent of the court and the state, a defendant may enter a conditional plea of guilty or no contest reserving, in writing, the right, on appeal from the judgment, to a review of an adverse determination of any specified pretrial motion. A defendant who finally prevails on appeal may withdraw the plea."

The state concedes that "[n]othing in the statutory text speaks directly to the issue at hand" and that "[t]he text does not address what happens if she chooses to withdraw the plea." However, relying on ORS 135.365 as context, it concludes that the legislature intended that "[t]he withdrawal of a plea under ORS 135.365 presumably contemplates that the

---

[6] Article VII (Amended), section 5(4), of the Oregon Constitution authorizes a district attorney to charge a person with a felony on a district attorney's information "if the person appears before the judge of the circuit court and knowingly waives indictment." *See also* ORS 131.005(9)(a) (authorizing the filing of a district attorney information for nonfelonies).

parties will be returned to the positions they occupied before the plea was entered."[7]

The state's argument is defeated by the ordinary rules of statutory interpretation. To discern the legislature's intention regarding the meaning of a statute, we begin our analysis by examining the text and context of ORS 135.335(3). We are mindful that, in the construction of a statute, we are to "declare what is, in terms or in substance, contained therein, not to insert what has been omitted." ORS 174.010. We perceive nothing in the text of ORS 135.335(3) or ORS 135.365, giving their words their ordinary meaning that supports the state's interpretation or creates any kind of ambiguity that would permit us to look beyond the text of the statutes themselves. Rather, those statutes govern only the withdrawal of a plea to the pending charge; they say nothing about the authority of the court to revive charges that have previously been the subject of a dismissal.

In sum, defendant's second assignment of error disposes of all of the charges that were formally dismissed by the trial court, and reversal of those convictions is required. That means, under our reasoning, that the only viable judgment of conviction before us is the conviction for manslaughter in the second degree. We turn therefore to defendant's other assignments of error relating to that conviction.

■ In particular, defendant argues in her first assignment of error that the trial court erred in failing to suppress a Breathalyzer test result obtained from a breath sample that defendant gave after the accident. Preliminarily, we are persuaded by the record that the officer who asked defendant to take the test had probable cause to believe that she was under the influence of intoxicants at the time of the accident and that, because of the dissipation rate of alcohol in the human body, exigent circumstances existed at the time. A detailed discussion of the facts that lead us to those conclusions would not benefit the bench or bar.

---

[7] ORS 135.365 provides, "The court may at any time before judgment, upon a plea of guilty or no contest, permit it to be withdrawn and a plea of not guilty substituted therefor."

The issue of the admissibility of the Breathalyzer test result is clouded, however, by the fact that the test result is not admissible in evidence under the implied consent law because defendant was not afforded a reasonable opportunity to consult *privately* with counsel before deciding whether to submit to the test.[8] *See State v. Durbin,* 335 Or 183, 63 P3d 576 (2003) (holding that the constitutional right under Article I, section 11, of the Oregon Constitution to consult with counsel regarding whether to take a Breathalyzer test in a DUII prosecution includes an opportunity to confer privately with counsel).

Defendant was interviewed at the scene of the accident. After the interview, she was arrested for reckless driving. Several minutes later, she was asked to perform some field sobriety tests that resulted in her arrest for DUII. Defendant was then transported to the nearby county jail where she was asked to submit to a breath test. She requested the opportunity to confer with counsel, and counsel was contacted. Counsel advised defendant by telephone, but she remained within the sight and hearing of the arresting police officer. The state conceded that this consultation did not comply with the right to private consultation required by Article I, section 11.

Defendant argues that, as a result of those circumstances, the test result is inadmissible regarding the other charges, including the charge of criminally negligent homicide. The state, relying on *State v. Newton,* 291 Or 788, 636 P2d 393 (1981), counters that it could have lawfully compelled her to produce the evidence of her blood-alcohol content based on probable cause and exigent circumstances and that it therefore follows that the evidence of the test result is admissible under that rationale as an exception to the warrant requirement of Article I, section 9, of the Oregon

---

[8] The implied consent law, ORS 813.100, provides that any person who operates a motor vehicle shall be deemed to have given consent to a chemical test of the person's breath for the purpose of determining the alcohol content of the person's blood if the person is arrested for driving a motor vehicle while under the influence of intoxicants. If a person refuses to take a test, under the law, the person's driving privileges are suspended. If a person takes the test and has a level of alcohol in the person's blood that is above the legal limit under ORS 813.300, the person's driving privileges are also suspended.

Constitution. Defendant replies that she took the breath test because of the inherent coercion of the implied consent law and that the "claim of probable cause and exigent circumstances is purely hindsight" without a "shred of evidence in the entire record that the practice of the state in the event of a refusal was to coerce the obtaining of a breath test."

The state, although conceding the *Durbin* violation, frames the issue as "whether the state can compel a defendant to take a breath test in a prosecution for a non-DUII charge." According to the state, "If a defendant can be compelled to provide the evidence, then the advice of counsel cannot be of assistance and she is not entitled to it." (Footnote omitted.) In support of its argument, it points to ORS 813.320(1), which states that the provisions of the implied consent law shall not be construed to limit the introduction of otherwise competent evidence in any criminal action other than one for DUII. Finally, the state points to *Newton* in support of its assertion that the result is admissible because the state could have compelled defendant to take the Breathalyzer test based on the probable cause and exigent circumstances exception to the warrant requirement in Article I, section 9.

We agree with parts of the state's argument. The legislature has expressly authorized the use of breath test results in prosecutions for offenses other than DUII without compliance with the requirements of the implied consent law. Thus, there is no statutory bar to the use of the test result as evidence in this case. The remaining question, however, is whether the admission of the test result is prohibited by the Oregon Constitution's provisions regarding the right to counsel in criminal prosecutions and the right not to be subjected to unreasonable searches and seizures. We also recognize, as the state urges, the general proposition that a seizure based on probable cause and exigent circumstances constitutes an exception to the rule that warrantless seizures are unreasonable *per se*, and we agree with the state's argument, in the abstract, that the state could constitutionally take a breath sample from a defendant by force based on those circumstances. We also agree with the state that defendant's opportunity to confer with counsel before taking a breath test

arises because of the congruence of the implied consent laws regarding breath test results and Article I, section 11.

Ultimately, the state's position regarding the constitutionality of the admission of the test result in this case appears to rest on the reasoning in *Newton*. In that case, the trial court suppressed evidence of a breath test result on the basis that the defendant had been denied the opportunity to make a telephone call to consult with a lawyer before taking the test. On appeal, the *Newton* court reversed. It first ruled that the defendant's "request to call a lawyer is not material to statutory compliance" with the implied consent law. *Newton*, 291 Or at 800. Next, it held that the warrantless seizure of the defendant's breath sample did not violate Article I, section 9, because there was probable cause to believe that the defendant's breath contained evidence of intoxicants and because exigent circumstances existed at the time of the seizure. *Id.* at 801-02. Finally, the court rejected the defendant's argument that there is a constitutional right to consult with counsel under Article I, section 11, before a DUII suspect decides whether to take a breath test. *Id.* at 802.[9]

In *State v. Spencer*, 305 Or 59, 74-75, 750 P2d 147 (1988), the court altered analysis in *Newton*, ruling that an arrested driver has a right on request under Article I, section 11, to a reasonable opportunity to try to obtain legal advice before deciding whether to submit to a breath test. In light of the *Spencer* court's recognition that Article I, section 11, affords such an opportunity, the question arises whether the state's reliance on *Newton* is misplaced. We conclude that it is for the reasons that follow. The *Newton* court held that there was no violation of Article I, section 11, because that provision afforded no right to confer with counsel before deciding

---

[9] The *Newton* court reasoned,

"Neither Article I, section 9, nor the Fourth Amendment forbid compulsion; they allow compulsion when warranted or otherwise reasonable. The right of counsel does not apply under the Fourth Amendment as it does under the Fifth Amendment because a reasonable search and seizure need not be voluntary. Rather, as we said above, seizure may be compelled regardless of the action of an attorney. No right of counsel is implied by the right of freedom from unreasonable seizures. Therefore, the discouragement of defendant's call to an attorney has no effect on the validity of the seizure in this regard."

291 Or at 802 (citations omitted).

whether to take a breath test. However, under *Spencer*, such an opportunity existed because, at that moment of decision, an arrested person is ensnared in a criminal prosecution. 305 Or at 74. The *Spencer* court's holding eviscerates that aspect of the *Newton* court's reasoning. Under *Spencer* and *Durbin*, with regard to the DUII test, defendant had the constitutional right under Article I, section 11, to a reasonable opportunity to confer with counsel before deciding whether to take the breath test. Moreover, if a person arrested for DUII is successful in contacting counsel, then the opportunity to confer includes the opportunity to consult privately. *Durbin*, 335 Or at 191-92.

Nonetheless, the state argues that "the right to consult counsel [before deciding whether to take a breath test] has its roots in implied consent law and is limited to a DUII prosecution." It explains that, because it could have constitutionally compelled defendant to produce a breath sample based on exigent circumstances and on probable cause for purposes of the investigation of a non-DUII offense, defendant could not have refused to provide a sample of her breath. In other words, because defendant had no right to refuse to provide the breath sample under those circumstances, "the advice of counsel cannot be of assistance and [defendant was] not entitled to it." Under the state's reasoning, it follows that the right to consult with counsel under Article I, section 11, is confined to the DUII charge. Thus, the state concludes, any taint from the Article I, section 11, illegality in this case is irrelevant and does not prevent the admissibility of the breath test result as to the criminally negligent homicide charge.

Whether the reach of the exclusionary rule applies in a particular context is, "fundamentally, a question of the rationale behind that rule." *State ex rel Juv. Dept. v. Rogers*, 314 Or 114, 118-19, 836 P2d 127 (1992). We think that the *Spencer* court's reasoning is equally applicable to the circumstances of this case, particularly where defendant was not only under arrest for DUII but also was subject to a criminal investigation involving the death of another person. The holding in *Spencer* arises, in our view, because a motor vehicle operator's consent to take a breath test is implied by statute; a person in defendant's circumstances could not legally

refuse to take the test. *Spencer*, 305 Or at 67. However, she could have physically refused to take the test. The legislature, recognizing the practical reality of such circumstances, provided an additional incentive for drivers arrested for DUII to take a breath test: the suspension of their driving privileges if they refuse. *Id.* at 71. Accordingly, the *Spencer* court expanded the right to consult with counsel under Article I, section 11—at least, in limited form—to the circumstances of a defendant charged with DUII, reasoning that, at the moment of deciding whether to take the test, the arrested person is "ensnared in a criminal prosecution" and "is confronted with the full legal power of the state[.]" *Spencer*, 305 Or at 74 (internal quotation omitted).

We conclude that the *Spencer* court's reasoning applies equally to the circumstance where a defendant faces the prospect of defending charges other than a DUII charge and the seizure of a breath sample arising out of the provisions of the implied consent law could furnish incriminating evidence regarding those charges. Defendant could not legally refuse to take the breath test because she had operated a motor vehicle on a public highway. The coercive effect of the implied consent law was as much in play with regard to the manslaughter charge as it was with the DUII charge at the time that defendant had to make a decision about whether to take the breath test. Certainly, the degree to which defendant was ensnared in a criminal prosecution and confronted with the full power of the government was no less than that of a defendant facing only a DUII prosecution. Contrary to the state's argument, we are unwilling to speculate that advice from counsel to defendant about whether to take the test regarding non-DUII charges would have been of no assistance to her, particularly in light of the looming specter of charges involving the homicide. Prudent counsel might very well have advised defendant not to take the test, knowing that the state might pursue a homicide prosecution.

The state's reasoning would permit it to remove the taint of any illegality arising from the seizure of a breath sample by charging the defendant with crimes other than DUII or by proposing after the seizure an alternative, hypothetical basis for justifying the seizure of the evidence that would have avoided the taint if the breath sample had been

seized on that basis. The problem with the state's reasoning is that, if adopted, the police could ignore the constraints of Article I, section 11, administer a breath test based on an arrest for DUII, and then use the test result derived from the breath sample seized under the implied consent law in the prosecution of other charges with impunity. Accordingly, we conclude that, under the circumstances of this case, defendant had a right under Article I, section 11, to a reasonable opportunity to consult *privately* with counsel before the breath test was administered and that the violation of that opportunity constitutes a prior illegality that taints the admissibility of defendant's breath sample as evidence.

■    Generally, there are limited circumstances under which the taint of a prior illegality can be purged. Thus, for example, if the state is able to show that it could have obtained the test result independently of the tainted source by proper and reasonable investigatory procedures arising from circumstances other than those disclosed by the illegal seizure itself, or if an intervening event caused the nexus between the discovery of the evidence and the illegality to be attenuated, then the evidence may be admissible.[10] The burden, however, is on the state to prove such an exception to the exclusionary rule. *State v. Miller*, 300 Or 203, 225, 709 P2d 225 (1985), *cert den*, 475 US 1141 (1986). As defendant points out, the state makes no argument on appeal based on evidence of any proper and predictable police investigatory procedures, other than those involving the implied consent law, that could have led to the discovery of the test result, nor does it argue that it was its practice to seize breath samples from persons in defendant's circumstances based on probable cause and exigent circumstances apart from the implied consent law. We therefore agree with defendant that the state

---

[10] For example, in *Nix v. Williams*, 467 US 431, 104 S Ct 2501, 81 L Ed 2d 377 (1984), the defendant's Sixth Amendment right to counsel was violated by the police officer's post-arrest interrogation, but evidence of the condition of the victim's body was properly admitted at trial because the state proved that the body inevitably would have been found within a short period of time by persons who were searching for it. *See also State v. Mituniewicz*, 186 Or App 95, 109, 62 P3d 417, *rev den*, 335 Or 578 (2003) (holding that the concept of "attenuation" can operate to purge the taint of an illegality where the facts demonstrate an event later than and independent of the illegal conduct between the evidence in question and the illegality that would have led to the discovery of the evidence in question).

has not carried its burden of demonstrating that the taint of the illegality accompanying the seizure of defendant's breath sample has otherwise been purged. Accordingly, the trial court erred in failing to grant defendant's motion to suppress evidence of the test result as to the manslaughter charge.

In her third assignment of error, defendant asserts that the trial court erred in admitting testimony about the legal limit for blood alcohol content for operators of motor vehicles in this state when her breath test result was less than the legal limit. In her fourth assignment of error, defendant challenges the admission of expert testimony that extrapolated her breath test result back to the time of the accident. Because the test result is not admissible in evidence for the reasons explained above and the evidence of the test result is the factual predicate for the above assignments, it is unlikely that the issues framed by the third and fourth assignment will occur on retrial. We therefore decline to address them.

Convictions for assault in the third degree, assault in the fourth degree, driving while under the influence of intoxicants, and reckless driving reversed; conviction for manslaughter in the second degree reversed and remanded for new trial.