Argued and submitted September 6, decision of Court of Appeals affirmed; judgment of circuit court reversed, and case remanded to circuit court for further proceedings November 24, 2006

## STATE OF OREGON,
*Petitioner on Review,*

*v.*

## KAREN RUTH DINSMORE,
*Respondent on Review.*

## (CC 9909234CR; CA A122052; SC S53033)

147 P3d 1146

Doug M. Petrina, Assistant Attorney General, argued the cause for petitioner on review. With him on the briefs were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General, Salem.

Robert M. McCrea, McCrea, PC, Eugene, argued the cause and filed the briefs for respondent on review.

Before De Muniz, Chief Justice, and Carson, Gillette, Durham, and Balmer, Justices.**

DE MUNIZ, C. J.

** Riggs, J., retired September 30, 2006, and did not participate in the consideration or decision of this case. Kistler and Walters, JJ., did not participate in the consideration or decision of this case.

## DE MUNIZ, C. J.

This criminal case requires that we resolve two issues: (1) whether the trial court erred in reinstating charges that it previously had dismissed pursuant to a plea agreement between defendant and the state; and (2) whether breath test evidence that is inadmissible in a prosecution for driving under the influence is also inadmissible in a homicide prosecution arising from the same incident. Under the circumstances of this case, we answer both of those questions in the affirmative.

We take the facts from the record and the Court of Appeals' prior opinions in this case. In June 1999, defendant was driving her vehicle late at night on Highway 20 in Harney County when she collided with two other vehicles that were stopped on the highway waiting to turn left at an intersection. That collision killed the driver of one vehicle and severely injured the occupants of the other vehicle. At the on-scene investigation that followed, a police officer approached defendant to ask her about the collision and noticed a faint odor of alcohol on her breath. The officer began questioning defendant without first advising her of her *Miranda* rights, and defendant told the officer that she had consumed one beer approximately nine hours earlier. She also said that she had been using medications for high blood pressure and allergies. Shortly thereafter, the officer arrested defendant for reckless driving and driving under the influence of intoxicants (DUII). He then informed defendant of her *Miranda* rights. Defendant subsequently agreed to perform some field sobriety tests at the crash site and answered additional questions about the collision. The officer then drove defendant to the police station where she agreed to take a Breathalyzer test to establish the alcohol content of her blood. Although defendant asked to speak to an attorney and did so by telephone before taking the test, a police officer nevertheless remained within defendant's sight and hearing while that conversation took place. The Breathalyzer test showed, approximately four hours after the accident, that defendant had a blood alcohol content of .06.

The state charged defendant with second-degree manslaughter, ORS 163.125, third-degree assault, ORS

163.165, fourth-degree assault, ORS 163.160, DUII, ORS 813.010, and reckless driving, ORS 811.140. In response, defendant moved to suppress (1) the officer's observation that he had smelled alcohol on defendant's breath at the crash site; (2) defendant's statements to police authorities made during interviews at the crash site; (3) the results of defendant's field sobriety tests; and (4) the result of defendant's Breathalyzer test. Those pretrial motions were denied.

Before trial, however, the state and defendant negotiated a plea agreement. *See* ORS 135.405 (district attorney may engage in discussion with criminal defendant for purpose of reaching plea agreement). The written agreement, authored by the prosecution, provided, in part:

> "In return for [defendant's] *conditional plea of 'No Contest' pursuant to ORS 135.335(3)* to the charge of Criminally Negligent Homicide (the lesser included charge of Count I), the State agrees to dismiss [the] remaining counts in the indictment. Pursuant to ORS 135.335(3), the defendant reserves the right to appeal the judgment of this court denying the pretrial motions filed by defendant."

(Emphasis added.) Defendant agreed to the prosecutor's terms and, in exchange, the state dismissed the remaining charges against her. The prosecutor later stated in an affidavit submitted to the trial court that "the issue of proceedings on remand did not arise except as addressed in ORS 135.335(3), to wit: That the defendant could withdraw her conditional no contest plea if she prevailed in the Court of Appeals."

After entering her plea, defendant pursued an appeal and was partially successful in that endeavor. Although the Court of Appeals rejected most of defendant's arguments, it did conclude that the trial court should have suppressed the statements that defendant had made during the police interview at the crash site before being given her *Miranda* warnings. *State v. Dinsmore*, 182 Or App 505, 49 P3d 830 (2002). Consequently, defendant sought, on remand, to withdraw her prior no contest plea to the criminally negligent homicide charge.

In response, the state requested that the trial court reinstate all the previously dismissed charges. The state

argued that defendant's withdrawal of her original plea was a breach or repudiation of the parties' original bargain and that, as a result, the original plea agreement had been extinguished. The trial court agreed, ruling that

> "[y]ou want the benefit of the bargain, of the plea agreement, then that's based upon maintaining the plea that you entered. You withdraw your plea, we in fact do go back to square one. All charges are reinstituted and we're proceeding, in this court's perspective, on all the charges."

Consistently with that ruling, the trial court reinstated the original charges against defendant and she pleaded not guilty to all of them.

Prior to trial, defendant once again moved to suppress evidence from the Breathalyzer test that she had taken while in police custody. The state conceded that the police officer's presence during defendant's telephone call to her lawyer before the test had violated defendant's right to a private consultation with counsel, *see State v. Durbin*, 335 Or 183, 63 P3d 576 (2003) (discussing right), and agreed that the result of the breath test could not be admitted to support the DUII charge. The state argued, however, that the result nevertheless could be used in conjunction with the other counts against defendant, such as the manslaughter charge. The trial court agreed with the state and held that the Breathalyzer test result was admissible for that purpose. At trial, a jury convicted defendant on all charges, including second-degree manslaughter.

Defendant once again appealed. She first argued that the state could not reinstate charges other than the criminally negligent homicide charge once the trial court had dismissed them pursuant to the plea agreement. She then argued that, in light of the state's concession that the result of her breath test was inadmissible with regard to the DUII charge, the trial court had erred in refusing to suppress that evidence with respect to the homicide charge as well. The Court of Appeals agreed with both arguments and remanded for a new trial. *State v. Dinsmore*, 200 Or App 432, 116 P3d 226 (2005). We subsequently allowed the state's petition for review to examine both of those issues.

On review, the state first contends that the trial court did not err in reinstating the state's original roster of charges against defendant. The specifics of that argument focus on what the state perceives to be the trial court's inherent authority to now proceed on defendant's original indictment and the Court of Appeals' impropriety in examining that authority on its own motion. There is, however, a more fundamental issue at play here, the resolution of which makes it unnecessary to address those particular arguments. As it has maintained throughout this case, the state again asserts on review that (1) defendant repudiated the plea agreement when she withdrew her "no contest" plea; and (2) reinstating the charges against defendant simply restored the *status quo ante* following defendant's breach of that agreement. As we explain below, however, the state is wrong in both respects, largely because it erroneously has conflated the statutory plea provisions of ORS 135.335(3) with the provisions of the plea agreement reached by the parties.

ORS 135.335(3) permits a defendant to plead guilty or no contest to a criminal charge while retaining the right to appeal adverse rulings on issues raised before trial. Should a defendant prevail on such an appeal, the statute expressly allows the defendant to withdraw the plea. The statute provides:

> "With the consent of the court and the state, a defendant may enter a conditional plea of guilty or no contest reserving, in writing, the right, on appeal from the judgment, to a review of an adverse determination of any specified pretrial motion. *A defendant who finally prevails on appeal may withdraw the plea.*"

(Emphasis added.) Before the addition of ORS 135.335(3) to Oregon's statutes in 1999, a criminal defendant who pleaded guilty or no contest to a criminal charge had a limited right of review on appeal. At that time, the only bases for appellate review following a guilty plea were that a sentence either (1) exceeded the maximum allowed by law; or (2) was unconstitutionally cruel and unusual. *See* ORS 138.050(1) (1997), *amended by* Or Laws 1999, ch 134, § 3 (so stating). Consequently, a defendant who, for example, was unsuccessful in pretrial efforts to suppress evidence, was required to enter a

plea of not guilty and proceed to trial—often a trial on stipu-
lated facts—to preserve the ability to contest the adverse pre-
trial ruling.

Today, however, under ORS 135.335(3), a criminal
defendant—with the consent of the trial court and the
state—may enter a conditional plea of guilty or no contest,
litigate pretrial issues on appeal and then, if successful, later
withdraw the plea. Under that option, the parties—and with
them, the trial courts—save both time and resources by side-
stepping proceedings conducted solely to facilitate the appeal
of pretrial matters.

As the state correctly recognizes, ORS 135.335(3)
anticipates a return to the *status quo ante* following a suc-
cessful appeal and subsequent plea withdrawal; *i.e.*, a defen-
dant will face the same array of charges that he or she faced
prior to entering the conditional plea. That is true, however,
only because ORS 135.335(3) does not, by its plain terms,
require the parties to exchange considerations—such as dis-
missing some charges in exchange for a particular plea to
others—to implement a conditional plea. It is therefore no
surprise that, when a conditional plea is entered as an expe-
diency under ORS 135.335(3), the parties begin anew on the
charges subject to the plea if the defendant's appeal is suc-
cessful and the defendant opts to withdraw the conditional
plea. To be clear, the only "condition" expressly associated
with the conditional plea statute is the one allowing a defen-
dant to withdraw a plea if the defendant's pretrial challenge
is ultimately successful on appeal.

That, however, is not the case when the state and a
defendant enter into a plea agreement that, by it terms, dis-
poses of specific criminal charges. Such agreements are
grounded in the bargain created by a mutually binding, *quid
pro quo* exchange between the parties. As this court recently
noted in *State v. Tannehill*, 341 Or 205, 211, 141 P3d 584
(2006),

> "a plea often results from an agreement between the parties
> in which, 'in return for the defendant's admission of guilt on
> some or all of the charged offenses, the state agrees either
> to dismiss some of the charges or to recommend a reduced
> sentence.'"

(Quoting *Gonzalez v. State of Oregon*, 340 Or 452, 457, 134 P3d 955 (2006).) The terms of the resulting bargain define the parties' obligations to each other, while the bargain itself is part of a process that, as the United States Supreme Court has noted,

> "must be attended by safeguards to insure the defendant what is reasonably due in the circumstances. Those circumstances will vary, but a constant factor is that when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promises must be fulfilled."

*Santobello v. New York*, 404 US 257, 262, 92 S Ct 495, 30 L Ed 2d 427 (1971).

In this case, it is undisputed that the plea agreement that the parties fashioned involved more than just a conditional plea entered pursuant to ORS 135.335(3). Both parties made major concessions to each other in reliance on their mutual promises. Under the terms of their agreement, the state agreed to dismiss all charges against defendant save one, in exchange for defendant's "conditional plea of 'No Contest' pursuant to ORS 135.335(3) to the charge of Criminally Negligent Homicide." As the prosecutor's trial affidavit made clear, defendant's right to withdraw her conditional plea if her appeal was successful was an integral and accepted part of that agreement. Defendant, in turn, waived a number of fundamental constitutional protections to plead to the remaining charge against her, knowing full well that, if her subsequent appeal was unsuccessful, she would be bound by her no contest plea.

Ultimately, defendant entered her conditional plea of no contest to the agreed-upon charge of criminally negligent homicide, and the state, as agreed, dismissed the other charges. Defendant, however, prevailed on appeal, and subsequently withdrew her plea, actions that were in keeping with the specific terms of the parties' agreement. As a result, the state's first argument that defendant's plea withdrawal constituted a repudiation of her plea agreement is unavailing. Indeed, withdrawal of the conditional plea as permitted by ORS 135.335(3) was one of the incentives that the state offered to defendant in exchange for her no contest plea. The

state's second argument—that reinstatement of all the charges against defendant simply restores the *status quo ante* following defendant's repudiation of the agreement—is similarly unavailing. The *status quo ante* of the parties' relationship in this case was defined by the terms of the parties' agreement, and defendant fully has performed her end of that bargain. She did not breach the agreement, she remains fully within its ambit, and she is now entitled to enforce its terms. The trial court erred in ratifying the state's contrary position. Should the state go forward with its case against defendant, it must do so—per its own agreement—on the single charge of criminally negligent homicide.

We turn next to the question whether evidence of defendant's breath test is admissible in the criminally negligent homicide case that remains.

In *State v. Spencer*, 305 Or 59, 750 P2d 147 (1988), this court concluded that Article I, section 11, of the Oregon Constitution—providing, among other things, that an accused person shall have the right to be heard in all "criminal prosecutions"—gave arrested drivers who were asked to take Breathalyzer tests the right to a reasonable opportunity for consultation with legal counsel. In *Spencer*, this court was required to construe the phrase "criminal prosecutions" in Article I, section 11, and consider, in turn, (1) what constitutes a criminal prosecution, and (2) when do such proceedings begin. In answering those questions, the court wrote:

> "A person taken into formal custody by the police on a potentially criminal charge is confronted with the full legal power of the state, regardless of whether a formal charge has been filed. Where such custody is complete, neither the lack of a selected charge nor the possibility that the police will think better of the entire matter changes the fact that the arrested person is, at that moment, ensnared in a 'criminal prosecution.' The evanescent nature of the evidence the police seek to obtain may justify substantially limiting the time in which the person may exercise his or her Article I, section 11, right, but it does not justify doing away with it."

*Id.* at 74. As a result, this court held that, under Article I, section 11, "an arrested driver has the right, upon request, to a reasonable opportunity to obtain legal advice before deciding

whether to submit to a breath test." *Id.* at 74-75. The court then concluded that denial of that right required exclusion of the breath test result at trial. *Id.* at 76.

■ Although the criminal charge at issue in *Spencer* was a DUII, none of the observations that this court made in that case suggest that the principles announced there apply to only DUII prosecutions; indeed, the opposite is true. Here, it is undisputed that, at the time that police authorities were preparing to administer the Breathalyzer test to defendant, she had been "taken into formal custody by the police" and faced a "potentially criminal charge" that involved at least one fatality, not to mention the charges of DUII and reckless driving for which the arresting officer already had cited her. Having been formally taken into police custody, read her *Miranda* rights, and transported to a police station for further questioning, defendant's custody was, in fact, "complete," to use the parlance of *Spencer*. Moreover, as we already have noted, the state conceded that the police officer's presence during the telephone call violated defendant's right to a private consultation with her attorney and, by extension, violated her rights under Article I, section 11, as articulated in *Spencer*. The remedy for that violation of defendant's constitutional right is exclusion of the breath test result. Nothing in *Spencer* limited the scope of that case's holding or the scope of the remedy it provided. The state violated defendant's state constitutional right to counsel, and we therefore conclude that the result of defendant's breath test is inadmissible for all purposes, including the remaining homicide charge.

The decision of the Court of Appeals is affirmed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.