Argued and submitted March 8, 2011, at the University of Oregon School of Law, Eugene, Oregon, decision of Court of Appeals reversed; judgment of circuit court reversed, and case remanded to circuit court for further proceedings May 26, 2011

## STATE OF OREGON,
*Respondent on Review,*

*v.*

## ROBERTA GAIL GILMORE,
*Petitioner on Review.*

(CC 0702221CR; CA A139547; SC S058602)

256 P3d 95

Ernest G. Lannet, Chief Deputy Defender, Salem, argued the cause and filed the brief for petitioner on review. With him on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Tiffany Keast, Assistant Attorney General, Salem, argued the cause and filed the brief for respondent on review. With her on the brief were John R. Kroger, Attorney General, and Mary H. Williams, Solicitor General.

Before De Muniz, Chief Justice, and Durham, Kistler, Walters, Linder, and Landau, Justices.**

KISTLER, J.

---

** Balmer, J., did not participate in the decision of this case.

## KISTLER, J.

After a person has been charged with a crime and the right to counsel has attached, Article I, section 11, of the Oregon Constitution prohibits the police from asking that person about the charged crime without first notifying the person's lawyer, unless the person initiated the conversation and knowingly and intentionally waived his or her right to counsel. *See State v. Randant*, 341 Or 64, 71-73, 136 P3d 1113 (2006). This case raises once again the question of what steps the police must take to ensure a knowing and intentional waiver. In this case, the trial court implicitly found that defendant had waived her right to counsel and denied her motion to suppress. The Court of Appeals affirmed that ruling and the resulting judgment without opinion. *State v. Gilmore*, 235 Or App 380, 231 P3d 1191 (2010). Having allowed review, we now reverse the Court of Appeals decision and the trial court's judgment and remand this case for further proceedings.

Two women brandishing a sword robbed the Purple Parrot Lounge in Klamath Falls. As a result of that crime, the grand jury charged defendant with conspiracy to commit robbery and first-degree robbery. The trial court arraigned defendant on those charges and appointed counsel to represent her. After her arraignment, defendant remained in custody pending trial. Approximately two months later, while she was still awaiting trial, defendant sent two notes to Oregon State Police Detective Mogle asking him "to come talk to her."[1] Although the notes did not say what defendant wanted to talk about, Mogle recently had spoken to a member of defendant's family and understood that defendant "wanted to see her kids before she went to prison."

After he received the second note, Mogle agreed to meet with defendant. Pursuant to a department policy that requires two law enforcement officers to be present during such a meeting, Mogle asked Klamath County Detective Johnson to accompany him. When he asked Johnson to go

---

[1] We take the facts from the hearing on defendant's motion to suppress the evidence that the police obtained as a result of their conversation with her. We state the facts consistently with Mogle's testimony at that hearing, which the trial court "adopt[ed] * * * as findings [of fact] for the purpose of the [m]otion" to suppress.

with him, Mogle was not aware that Johnson had arrested defendant on her pending robbery and conspiracy charges. Johnson, for his part, did not realize that the person whom Mogle was going to meet was the person whom he had arrested approximately two months earlier for the Purple Parrot robbery.

When defendant was escorted into the interview room to meet with Mogle, she was surprised to see Johnson there. She asked Mogle, "Oh, no, what'd you bring him for?" Defendant said that Johnson was "the one [who] had arrested her on the case that she's got pending," and defendant and Mogle spoke briefly about "why she didn't want [Johnson] there." Johnson told defendant that department policy required that two officers be present during the meeting.

When asked if that were the entirety of their conversation, Mogle testified:

> "No. She said that she wanted to see her kids before she went up to the pen. That she had information that Gina had done the Purple Parrot robberies in Medford [apparently a different set of robberies from the Klamath Falls Purple Parrot robbery]. And that her attorney was an asshole. And that I was to relate to the DA that if you allowed her to have programs, she would take the deal and plead right away. And also there was a conversation—she said that she knew where the sword—who—the sword was—she gave it to somebody."

When asked whether he had questioned defendant about "the Purple Parrot incident," Mogle replied that he did not think that he had asked specific questions about that robbery. However, he noted that he might have said, "That was pretty stupid. Why would you be involved in that." Mogle also acknowledged that he told defendant that, "if she knew where the sword was[, s]he probably ought to give it up." In response to Mogle's statement, defendant used Mogle's cell phone to call the person who was keeping the sword. That person turned the sword over to the police.

It is not clear from Mogle's testimony when, during their conversation, he discussed either the robbery or the sword with defendant or what prompted him to mention the

charged crimes; specifically, it is not clear whether Mogle asked defendant about the Purple Parrot robbery only after she brought up the possibility of making a deal with the district attorney regarding that crime or whether he asked about the pending charges first. One proposition is clear from everyone's testimony, however. At no point during the meeting did either officer advise defendant of her *Miranda* rights, remind her that she had a right to have counsel present before discussing the pending charges, or otherwise seek to determine whether defendant knowingly and intentionally chose to waive her right to counsel regarding the pending charges.

After defendant's lawyer learned of the meeting, he moved to suppress both defendant's statements about the charged crime and the physical evidence that the officers had obtained as a result of the meeting. He contended that, in questioning defendant, the officers had violated her right to counsel under both Article I, section 11, of the Oregon Constitution and the Sixth Amendment to the United States Constitution. The trial court denied defendant's motion. It reasoned that, because defendant had "evinced a willingness and desire for a generalized discussion about the investigation," the officers had not violated either her state or federal right to counsel.

After the trial court's ruling, defendant entered into a plea agreement with the state. It appears that defendant agreed to enter a conditional guilty plea to second-degree robbery, *see* ORS 135.335(3) (authorizing conditional guilty pleas), and that the state agreed to dismiss the conspiracy and first-degree robbery charges.[2] The trial court accepted

---

[2] Defendant's plea petition incorporates by reference the terms of the "plea agreement." We note that the record contains an "offer of negotiation," which both the prosecutor and defense counsel signed. We also note that one of the terms in the offer (the offer does not bind the state if defendant appeals) appears to be at odds with one of the terms set out in the plea petition (a conditional guilty plea). It is unclear on this record whether the signed offer of negotiation is the plea agreement to which the plea petition refers, whether the parties modified the offer of negotiation, which became the plea agreement to which the plea petition refers, or whether the parties entered into a new plea agreement, which superseded the offer of negotiation. Although the exact terms of the parties' plea agreement may matter on remand, *see State v. Dinsmore*, 342 Or 1, 6-8, 147 P3d 1146 (2006), they do not affect our disposition of the issue that defendant has raised on review.

the parties' plea agreement and entered judgment accordingly. The Court of Appeals affirmed the trial court's judgment, and we allowed defendant's petition for review to consider whether the officers complied with defendant's right to counsel, as guaranteed by the state and federal constitutions. We begin with defendant's state constitutional claim.

The relevant principles are well established. Article I, section 11, of the Oregon Constitution guarantees, among other things, the right of a criminal defendant "[i]n all criminal prosecutions * * * to be heard by himself and counsel." That right "entitle[s a person charged with a crime] to the benefit of an attorney's presence, advice and expertise in any situation where the state may glean involuntary and incriminating evidence or statements for use in the prosecution of its case against defendant," without regard to "whether or not [a] defendant specifically requests an attorney's presence at the interrogation." *State v. Sparklin*, 296 Or 85, 93, 672 P2d 1182 (1983). "Ordinarily, 'there can be no interrogation of a defendant concerning the events surrounding the crime charged unless the attorney representing the defendant on that charge is notified and afforded a reasonable opportunity to attend.' " *Randant*, 341 Or at 71 (quoting *Sparklin*, 296 Or at 93).

That bar is not absolute, however. As *Sparklin* made clear, the right to counsel under Article I, section 11, is offense-specific; that is, "[t]he [state constitutional] prohibitions placed on the state's contact with a represented defendant do not extend to the investigation of factually unrelated criminal episodes." 296 Or at 95; *see State v. Davis*, 313 Or 246, 263, 834 P2d 1008 (1992) (reaffirming that principle). Beyond that, Article I, section 11, does not preclude the state from using statements about the charged crime that a defendant unilaterally volunteers. *Randant*, 341 Or at 71. Finally, if a defendant initiates a conversation about a charged crime with the police and knowingly waives the right to counsel, Article I, section 11, does not bar the state from using any statement that the defendant makes about the charged crime in response to police questions, even though the police did not notify the defendant's counsel in advance of their meeting. *See id.* at 71-73.

In this case, there is no dispute that the state had charged defendant with two crimes and that the trial court had appointed counsel to represent defendant on those charges more than two months before she met with Mogle and Johnson. There is also no dispute that Mogle's conversation with defendant was not limited to factually unrelated crimes; at least some of their conversation centered on the robbery of the Purple Parrot in Klamath Falls, which gave rise to the robbery and conspiracy charges that defendant was facing. Finally, the state does not claim that defendant unilaterally volunteered the statements that she later sought to suppress. Rather, as Mogle testified, defendant made statements about the charged crime in response to his remarks to her. The issues accordingly reduce to whether defendant initiated the conversation about the charged crimes and, if she did, whether she knowingly and intentionally waived her right to counsel before making those statements.

On the first issue, the parties disagree as to who brought up the Klamath Falls robbery first—an issue that is not completely clear from the record that the state developed at the hearing on defendant's motion to suppress. Even if we assume, however, that defendant initiated the discussion of the charged crimes, the state still had to prove that defendant knowingly and intentionally waived her right to counsel. *See Randant*, 341 Or at 73; *State v. Meyrick*, 313 Or 125, 132, 831 P2d 666 (1992) (so stating in the context of waiving the right to counsel's assistance at trial).[3]

On that issue, this court held in *State v. Foster*, 303 Or 518, 530-31, 739 P2d 1032 (1987), and reaffirmed in *Randant*, that, "when a defendant voluntarily initiates contact with the police after counsel has been appointed, knowledge of the *Miranda* rights is sufficient to ensure that the defendant's waiver of his or her Article I, section 11, right [to counsel] is a knowing one." *Randant*, 341 Or at 73.[4] Not only

---

[3] Because we assume that defendant initiated the discussion of the Klamath Falls robbery, we do not consider whether Johnson's unwanted presence had any effect on the question of initiation.

[4] An officer need not go through the more extensive colloquy required when a defendant seeks to waive the right to counsel's assistance at trial. *Randant*, 341 Or

do *Miranda* warnings advise defendants of the right to counsel, but they also put defendants on notice of the consequences of foregoing counsel's assistance during police questioning—that any statement that they might make can be used against them. *Cf. Patterson v. Illinois*, 487 US 285, 293-94, 108 S Ct 2389, 101 L Ed 2d 261 (1988) (explaining why advising defendants of their *Miranda* rights is sufficient to ensure that the waiver of their Sixth Amendment right to counsel is knowing). Put differently, *Miranda* warnings put a defendant whose right to counsel has attached on notice not only of "a generalized right to counsel" but also of the "derivative right to the benefit of counsel's efforts to forestall involuntary and incriminating disclosures." *See State v. Haynes*, 288 Or 59, 71, 602 P2d 272 (1980) (identifying, in a related context, the information necessary for a knowing waiver of the Article I, section 12 right to counsel).

Beyond that, a defendant's decision to speak with an officer after being advised of his or her *Miranda* rights provides a basis for inferring that the defendant intentionally chose to relinquish those rights. *See State v. Davidson*, 252 Or 617, 620-21, 451 P2d 481 (1969) (holding that the trial court could infer an intentional relinquishment of a known right from the defendant's decision to speak with an officer after having been warned of his *Miranda* rights). Accordingly, we have upheld, against state (and federal) constitutional challenges, the admission of a defendant's statements when the defendant initiated the conversation about the charged crimes and the officer had advised the defendant of his *Miranda* rights before engaging in further conversation with the defendant about those crimes. *See Randant*, 341 Or at 73-74; *Foster*, 303 Or at 522, 530-31.

With those principles in mind, we turn to the facts of this case. As noted, there was no evidence at the suppression hearing that anyone had advised defendant of her *Miranda* rights at any point in this case. It is true, as the state notes, that the record discloses that the trial court had appointed counsel for defendant approximately two months before she met with Detectives Mogle and Johnson and that defendant

---

at 73; *cf. Meyrick*, 313 Or at 133 (discussing procedures required before a defendant can waive the right to counsel at trial).

had expressed a negative impression of her trial counsel during that meeting. And the state argues that the trial court could have inferred from those facts that defendant was aware that she had a right to counsel and that she chose not to exercise that right.

However, even if the court could have drawn those inferences, there is no basis in this record from which the trial court also could have inferred that defendant was aware that the statements she made to the officers could be used against her, that the officers were not necessarily acting in her interest when they asked about the sword, or that her counsel could have provided her with valuable assistance in navigating her way through the interview. There is, in short, no basis in this record from which the trial court could have inferred that defendant was aware of the benefit that she was giving up by speaking with the officers without her counsel present—information that is also necessary for a knowing waiver of the right to counsel. *See Haynes*, 288 Or at 71 (requiring evidence that the defendant was aware not only of the right to counsel generally but also of the benefit of counsel's assistance in "forestall[ing] involuntary and incriminating disclosures").[5]

We need not decide in this case whether *Miranda* warnings are always required when a defendant whose Article I, section 11, right to counsel has attached initiates a discussion with officers about the charged crimes; that is, we need not decide whether a trial court could find, in the absence of *Miranda* warnings, that a defendant was aware of the right to counsel and the risks of foregoing counsel's assistance and intentionally chose to relinquish those rights. It is sufficient in this case to hold that, because this record does

---

[5] The state noted in a memorandum of additional authorities that defendant had been arraigned and that, if she had appeared at arraignment without counsel, ORS 135.040 would have required the trial court to advise her that she had the right to counsel before being arraigned. Even if we assume that the trial court gave defendant that advice at arraignment, we do not see how that advances the state's argument. Defendant's arraignment occurred approximately two months before she met with Detectives Mogle and Johnson. Not only would any advice at arraignment have come long before defendant contacted Mogle, but ORS 135.040 only required the trial court to notify defendant that she had the right to counsel. It did not require the court to advise her of either the benefits of representation or the risks of going without counsel, which is the information missing here.

not disclose that defendant was aware of the risks of forgoing counsel's assistance, the state failed to prove that she knowingly waived her right to counsel. It follows that the trial court should have granted defendant's motion to suppress the evidence that resulted from the officers' questions about the robbery.

As noted, defendant entered a conditional guilty plea after the trial court denied her motion to suppress. Because defendant has finally prevailed on that motion, she may withdraw her plea on remand if she chooses to do so. *See* ORS 135.335(3) (providing that remedy for defendants who enter conditional guilty pleas and finally prevail on appeal); *State v. Dinsmore*, 342 Or 1, 6-8, 147 P3d 1146 (2006) (discussing the remedy when a defendant enters a conditional guilty plea as part of a larger plea agreement and prevails on appeal on the issue reserved in the plea).

The decision of the Court of Appeals is reversed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.